T. E. B. MASON *et al.* v. ALEXANDER MCLEOD.

No. 8614.

1. PATENT-RIGHTS — *Valid Statute.* The provisions of chapter 182 of the Laws of 1889 (¶ ¶ 4005–4007 Gen. Stat., 1889) requiring the vendor of patent-rights to file with the clerk of the district court copies of the letters patent, and to make and file an affidavit that the letters patent are genuine and unrevoked, and that he has authority to sell, and providing, further, that the words, " Given for a patent-right," shall be inserted in any written obligation taken from a vendee of a patent-right, are reasonable police regulations which do not violate the federal constitution, nor infringe upon the exclusive right secured to the patentee by the federal law.

2. —— *Violation of the Law — Void Contracts.* As the purpose of the statute was to prevent and punish fraud, and noncompliance with its provisions declared to be a misdemeanor, contracts made by a vendor of patent-rights in violation of the statute are void as between the parties.

3. —— *Vendee May Recover — Exception to the Rule.* The general rule that courts will not enforce contracts prohibited by statute, or allow the recovery of, money or property paid or delivered in pursuance of them, does not apply to vendees of patent-rights, for whose protection the statute was enacted.

*Error from Greenwood District Court.*
*Hon. C. W. Shinn, Judge.*

AFFIRMED.                                    OPINION FILED JUNE 6, 1896.

STATEMENT BY THE COURT.

On December 19, 1891, T. E. B. Mason sold to Alexander McLeod the right to manufacture, sell and use a patent for an improvement in pruning-hooks in the undivided half of the state of Texas. The consideration paid by McLeod was a tract of land in Greenwood county, Kansas, together with money and personal property of the aggregate value of $800, and in addition McLeod gave to Mason his promissory note for the sum of $500. Afterward, on March 3, 1892, a new agreement was entered into between the parties

by which McLeod was to surrender his patent to the Texas territory, and give a note for $235, and Mason was to sell to McLeod a right to the territory of Utah, the state of South Carolina, together with certain counties in western Kansas, and at the same time he was to surrender to McLeod the note for $500. Under this last agreement McLeod surrendered and delivered up to be canceled the patent deed for the Texas territory, and Mason conveyed to McLeod the right to the territory of Utah, the state of South Carolina, and also to certain counties in western Kansas. When the last agreement was made, the $500 note given by McLeod in pursuance of the first agreement was held by the State Bank of Le Roy, Kansas, as collateral security. But it was agreed by Mason that he would obtain the note from the bank, and that then McLeod should execute his note for $235 and in exchange receive the $500 note. Mason never procured the $500 note, and McLeod did not execute his note for $235. It was agreed between T. E. B. Mason and Laura A., his wife, that she should have the proceeds of the sales of the patent for the state of Kansas, and in pursuance of that agreement the real estate of McLeod was conveyed to Laura A. Mason, and the personal property was delivered to her. The agreements mentioned were all made in the county of Woodson, and at the time of making the same, as well as at the time of conveying the territory, Mason had not filed with the clerk of the district court of Woodson county copies of the letters patent, duly authenticated, nor had he made an affidavit before the clerk that the letters patent were genuine, and had not been revoked or annulled, or that he had authority to sell and barter the right to the patent; and, further, the note for $500 given in payment of said patent did not have the

words, "Given for a patent-right," written or printed therein. No false or fraudulent representations were made by Mason concerning the right to territory in the state of Texas at the time of making the sale, or concerning the new territory of Utah, South Carolina, and part of western Kansas.

On March 17, 1892, McLeod brought an action against T. E. B. and Laura A. Mason to annul the contract made between them, to set aside the deed to the land in Greenwood county which he had conveyed for the patent-right, to cancel the $500 note, which was still in the possession of Mason, and to recover the value of the personal property which had been transferred as a part of the consideration for the patent-right. The court, after finding the facts substantially as above stated, held that the attempted conveyance of the patent-right was illegal, and the patent deeds void, and that McLeod was entitled to a judgment for the reconveyance of the real estate previously transferred, for the surrender of the $500 note, and for the sum of $815, the value of the personal property delivered and the money paid for the illegal patent-right. The defendants complain and bring the case here for review.

*R. P. Kelley*, and *W. S. Marlin*, for plaintiffs in error.

*Stephenson & Hogueland*, *G. H. Lamb*, and *G. E. Manchester*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON J. : No attempt was made by Mason to comply with the statutory requirements concerning the transfer of patent-rights, and for this reason the trial court held the contract to be invalid, and adjudged a rescission. The principal question discussed

by counsel relates to the validity of the statute in vio-
lation of which the contract was made. Among other
things, it provides that it is unlawful for any person
to sell a patent-right in any county of the state with-
out filing with the clerk of the district court copies of
the letters patent, and with them an affidavit that the
letters patent are genuine, have not been revoked or
annulled, and that he has full authority to sell. It is
required that the affidavit shall give the name, age,
occupation, and residence of the party proposing to
sell, and he is required to exhibit a copy of the affi-
davit to any person on demand. There is a further
provision that any person who takes a written obli-
gation in consideration of a patent-right shall insert
in the body of it in writing or print the words, "Given
for a patent-right." A failure to comply with these
provisions is declared to be a misdemeanor, and the
penalty is a fine not exceeding $1,000 or imprison-
ment in the county jail not exceeding six months.
(Ch. 182, Laws of 1889; ¶ ¶ 4005-4007, Gen. Stat.
1889.)

In our opinion, these provisions do not trench upon
the federal power, nor interfere with the right secured
to a patentee by the federal law. It is true that no
state can interfere with the right of the patentee to
sell and assign his patent, or take away any essential
feature of his exclusive right. The provisions in
question, however, have no such purpose or effect.
They are in the nature of police regulations, designed
for the protection of the people against imposition and
fraud. There is great opportuity for imposition and
fraud in the transfer of intangible property such as
exists in a patent-right, and many states have pre-
scribed regulations for the transfer of such property
differing essentially from those which control the

transfer of other property. There were some early decisions holding that such regulations trenched upon the federal power and the rights of the patentee, but recent authorities hold that reasonable police regulations may be enacted by the state without usurping any of the powers of the federal government or infringing upon the exclusive rights of the patentee. (*Brechbill v. Randall et al.*, 102 Ind. 528 ; *New v. Walker*, 108 id. 365 ; *Pape v. Wright*, 116 id. 502 ; *Sandage et al. v. The Studebaker Brothers Manufacturing Co.*, 142 id. 148 ; *Tod v. Wick Brothers & Co.*, 36 Ohio St. 370 ; *Herdic v. Roessler*, 109 N. Y. 127 ; *Haskell v. Jones*, 86 Pa. St. 173 ; *Patterson v. Kentucky*, 97 U. S. 501 ; *Webber v. Virginia*, 103 id. 344.) The doctrine of these cases is that the patent laws do not prevent the state from enacting police regulations for the protection and security of its citizens, and that regulations like ours, which are mainly designed to protect the people from imposition by those who have actually no authority to sell patent-rights or own patent-rights to sell, should be upheld. We think the statute is valid.

The purpose of the statute, as we have seen, was to prevent and punish fraud, and noncompliance with its provisions is declared to be a misdemeanor, punishable by fine or imprisonment. The penalty implies a prohibition, and contracts made by a vendor of patent-rights in violation of the act are void as between the parties. The transfer of Mason, being illegal, did not constitute a valid consideration for the money or property obtained from McLeod. (*New v. Walker*, supra ; *Sandage et al. v. The Studebaker Brothers Manufacturing Co.*, supra.)

It is contended by plantiffs in error that if the statute is bad all of the parties are *in pari delicto*, and all should be left without remedy. It appears that the

contract finally made was not in fact closed up and completed. The $500 note previously delivered to Mason for the Texas territory was never delivered to McLeod. He had deposited the note as collateral in a bank at Le Roy, and it was not then under the control of himself or his wife. The return of this note and its exchange for the $235 note was a part of the consideration of the contract, and until these things were done it was not in fact executed. More than that, the general rule that courts will not enforce contracts prohibited by statute or allow the recovery of money or property paid or delivered in pursuance of them does not apply to McLeod. He cannot be held to be *in pari delicto*. The duties prescribed by the statute are imposed upon the vendor of patent-rights, and are provided for the protection of purchasers. The law was not violated by McLeod. It placed no burdens upon him, and, having committed no wrong, he is not precluded from asking and obtaining relief.

We think the pleadings are sufficient to warrant the findings that were made, and that the judgment should be affirmed.

All the Justices concurring.