## MANDLER v. RAINS.

No. 8555—Opinion Filed May 21, 1918.

Rehearing Denied July 23, 1918.

(174 Pac. 240.)

1. **Appeal and Error — Presumptions—Dismissal of Suit—Statute.**

Where plaintiff, under section 5126, Rev. Laws 1910, files motion to dismiss his cause of action, it is one of the conditions precedent to the automatic dismissal of said suit under said section that all costs be paid, and where in such case the defendant filed motion to strike the files on account of said motion being filed by plaintiff, and the same is by the court overruled, the presumption that goes with this action of the court (there being no evidence to rebut such presumption) is that the conditions precedent for the automatic dismissal of said suit were not complied with, or that the filing of said motion was obtained by fraud, and in either event said motion would be ineffectual to the automatic dismissal of said cause.

2. **Contracts—Indians—Commission on Sale of Inherited Interest in Allotment—Approval by County Court—Validity of Contract—Recovery of Money Paid.**

Where W., a full-blood Indian, makes a contract with M. wherein he agrees to pay M. all money in excess of a certain sum for which M. may sell his interest in an inherited allotment, and such contract is withheld from the knowledge of the county court who has jurisdiction to approve such sale under Act Congress May 7, 1908, c. 199, 35 Stat. 312, which contract had the effect, if not the purpose, of securing the approval of the county court to a conveyance for a less consideration than would have secured the approval of the court, had it been aware of the contract, this would render such contract void as between the parties, and W. would have a right to recover any sums of money paid M. under said contract, whether paid voluntarily or otherwise.

(Syllabus by West, C.)

Error from Superior Court, Muskogee County; H. C. Thurman, Judge.

Suit by Peter Washington, continued by Fred Rains, guardian of the estate of Peter Washington, an incompetent, against Charles W. Mandler. Judgment for plaintiff, motion for new trial overruled, and defendant brings error. Affirmed.

J. E. Wyand and B. Broaddus, for plaintiff in error.

W. P. Z. German, for defendant in error.

Opinion by WEST, C. This suit was originally brought by Peter Washington in the district court of Muskogee county against plaintiff in error to recover alleged illegal commission and expenses which were fraudulently obtained by defendant from plaintiff, in connection with the sale of an undivided one-half interest in the Lizzie Washington allotment, deceased wife of plaintiff. April 11th, before any pleadings were filed by defendant, there appears to be motion to dismiss filed by plaintiff. Some time thereafterwards defendant Mandler filed answer and cross-petition to plaintiff's petition. Thereafterwards the plaintiff was declared an incompetent, and defendant Fred Rains was appointed his guardian, and in May upon motion was substituted party plaintiff. Demurrer was filed to defendant's answer and sustained, and defendant filed an amended answer. When the case was called for trial, motion of plaintiff to transfer cause to the equity side of the docket to be tried to the court without the intervention of a jury and motion of defendants to strike all pleadings from the files on account of the motion thereinbefore filed by plaintiff to dismiss were overruled. Cause was tried to a jury, and verdict returned in favor of plaintiff. In due time the defendant's motion for new trial was filed, overruled, exceptions saved, and appeal perfected to this court. A number of assignments of error are urged, all of which may be considered under the following propositions:

(1) Did the court err in overruling defendant's motion to strike from the files all pleadings lodged in the court, because of the filing of plaintiff's motion to dismiss?

(2) Did the court err in giving the following instruction:

"You are instructed that if you find from the evidence that the contract between Peter Washington and C. W. Mandler was entered into and the subsequent payment of $2,750 was made by Peter Washington to C. W. Mandler pursuant to the terms of said contract for the purpose of effecting a sale of the interest of Peter Washington in the land referred to in the evidence, for a consideration moving to Peter Washington which the defendant Mandler knew was less than that which the county court of Muskogee county would require to be paid to Peter Washington before approving a conveyance of Washington's interest in said land, and that said contract was not entered into merely for the purpose of securing the services of defendant Mandler to procure a third person who would purchase the interest of Washington and providing for compensation to Mandler for his services, and that the $2,750 was not paid merely as a compensation to Mandler for his services in finding such purchaser, then, in that event, under the law such contract would be void, and the plaintiff is entitled to recover the $2,750 paid to defendant, and you should return your verdict in favor of the plaintiff for $2,750, and unless you so find from a preponderance of the evidence your verdict should be in favor of the defendant."

The assignment of error directed at this paragraph of the court's charge covers other assignments to the effect that the contract which plaintiff seeks to avoid was valid, and that in any event the payments made by plaintiff thereunder were voluntarily made, and could not be recovered.

Considering the first proposition, did the court err in overruling defendant's motion to strike files? Section 5126, Rev. Laws 1910, provides:

"Dismissal Without Order of Court.—A plaintiff may, on the payment of costs and without an order of court, dismiss any civil action brought by him at any time before a petition of intervention or answer praying for affirmative relief against him is filed in the action. A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss his action after the filing of a petition of intervention or answer praying for affirmative relief. * * * "

Construing the above section in case of Harjo v. Black et al., 49 Okla. 566, 153 Pac. 1137, the court in the body of the opinion used the following language:

"The statute was intended to furnish an expeditious means whereby a civil action could be voluntarily dismissed by the plaintiff at any time before' the filing of a petition of intervention or answer seeking affirmative relief against plaintiff was filed, and without the necessity of obtaining an order of court directing such dismissal. But the filing of the stipulation by plaintiff is not all, for the statute requires that the costs be paid."

And again:

"It is insisted by counsel for defendants in error that the lower court was without jurisdiction to hear and determine plaintiffs' motions to strike the stipulation from the files, because, among other reasons, no order or judgment was necessary to work a dismissal, and hence, though it be conceded that ordinarily the trial court has the control over orders or judgments during the term at which made, and for sufficient cause may modify or set them aside at that term, yet, as no order or judgment was required, the rule has no application. The decisions of this court and other courts sustaining the general rule stated, holding that the power to correct errors in their own proceedings is inherent in all courts of general jurisdiction, are collected in Todd et al. v. Orr, 44 Okla. 459, 145 Pac. 393. See, also, Phillip Carey Co. v. Vickers, 38 Okla. 643, 134 Pac. 851. The authority of the court, generally speaking, to set aside orders of dismissal, does not differ from that of other orders or judgments. In Doss et al. v. Tyack, 14 How. 298, 14 L. Ed. 428, it was insisted that the court had no power to set aside the order or decree dismissing the bill, unless on a new and original bill filed for that purpose. The contention is very similar to that made here by counsel for defendants, and was disposed of by the court in the following language: 'As regards the first point, we perceive no error in the action of the court, except in their first order dismissing the suit. It did not require an original bill to authorize the court to vacate an order or decree, at the same term at which it was made, on discovering that they have committed an error, or that the consent of the complainants to such dismissal was obtained by the fraud of the respondents or their agents. In fact, under such circumstances, it cannot be said that the act was done by the consent or will of the complainants at all. The court, in vacating the decree, were correcting an error both of fact and of law: and during the term at which it was rendered they had full power to amend, correct, or vacate it, for either of these reasons.'"

It does not appear in the instant case whether the motion to dismiss was actually lodged in the court by the plaintiff or the defendant, neither does it appear from the record that the costs were paid in full to that date. It is one of the conditions precedent to the automatic dismissal of the suit under section of statute, supra, that the costs be paid. The court, upon hearing of defendant's motion to strike the files, over-

ruled the same, and the presumption that goes with this action of the court (and the evidence does not rebut this presumption) is that the conditions for the automatic dis- missal of said suit were not complied with or that the same was obtained by fraud; in either event, said motion was ineffectual to dismiss said cause.

It appears that the motion to dismiss filed by the plaintiff was by him disregarded. At any rate, before any action was taken upon it, or before the same was called to the attention of the court, the defendant had filed an answer and a guardian had been appointed for plaintiff on the ground that he was an incompetent, and his guardian had appeared and asked to be substituted party plaintiff, and the same had been so ordered by the court.

We do not think it could be contended that this action on the part of the plaintiff in the mere lodging of a motion for dis- missal would have any more binding force than an order entered upon a motion filed for said purpose, and it is clearly within the power of the court to set aside a mo- tion to dismiss upon application of plain- tiff upon proper showing, at the same term of court at which order was made. In other words, the court has an inherent power over all entries, judgments, orders, and decrees at the term at which they are entered. This has been so repeatedly held by this court that it is unnecessary to cite authorities in support thereof. If the court can do this, would not a reasonable construction upon the statute, supra, give the plaintiff the right to withdraw his motion for dismissal, or to waive the same with the sanction of the court, providing said action was taken at the term of the court at which the same was lodged or at any other term of the court for that matter, provided plaintiff had not complied with all the statutory require- ments in order to effectuate an automatic dismissal of his cause? We think so.

The record in this case does not affirma- tively show that all the conditions of the statute were complied with in order to effec- tuate a dismissal of plaintiff's cause of ac- tion. The court found that it did not, and the record does not disclose that the court was in error, and we accordingly hold that the court was not in error in overruling plaintiff's motion to strike the records from files or holding in effect that said suit had not been dismissed.

Considering the second proposition, it ap- pears from the evidence as disclosed by the record that the defendant Mandler had pre- sented to the county court of Muskogee county a deed for approval, conveying to himself plaintiff's interest in his deceased wife's allotment, for consideration of $3,- 500. The county court, upon the filing of the petition for approval of said deed, de- ferred action therein until he could make an investigation, and, after an investigation which disclosed plaintiff's interest to be worth $6,250, declined to approve said deed for the reason that the consideration was inadequate. A very short time after his ac- tion on the first deed by the county court, a contract was taken by Mandler from plain- tiff, in which plaintiff agreed with Mandler to pay him all sums in excess of $3,500 for which he might sell said interest as com- mission. A short time after the execution of this contract, another deed conveying plaintiff's interest in this allotment to one Farley for an expressed consideration of $6,250 was presented to the county court for approval. This deed was approved; the county judge after the approval of said deed taking the precaution to have the amount of the consideration, which was paid into court in the form of a certified check, de- posited to the credit of the said Peter Wash- ington, plaintiff, in a bank at Muskogee. And on the next banking day several checks were drawn by Washington, among which was a check for $2,750 in favor of defend- ant Mandler in settlement of the commis- sion under the contract assailed in this ac- tion. The record discloses that Washington was a full-blood Indian and was unable to dispose of his interest in this allotment ex- cept by and with the approval of the county court of Muskogee county.

It is contended by defendant that he did not know the reason why the county court refused to approve the first deed, or that the county judge had ascertained the value of plaintiff's interest in said allotment to be $6,250. He does say that he advised Farley to buy said interest and represented to Far- ley that the same was worth $8,000 to $10,000. However this may be, he could have ascertained this information by con- sulting the records of the county court. But whether he knew the same or not would, in our opinion, have no bearing upon the legal effect of this contract. The instruction of the trial court complained of, in effect, told the jury that if they believed from all the evidence that the contract between Peter Washington and the defendant Mandler was made for the purpose of effecting the sale of the interest of said Peter Washington for a less sum than the county court of Musko- gee county would require to be paid before approving the deed, and to circumvent the county court in its efforts to afford the proper protection to this full-blood Indian, and not merely for securing the services

of defendant Mandler to procure a third person to purchase said interest, then the contract would be void; but unless they so found their verdict should be for the defendant. We are unable to see how the defendant could complain of this instruction. The county court had refused to approve a deed conveying Washington's interest in said land for $3,500, the very amount which he was to receive under this last arrangement, and it would have been apparent to all persons of reasonable intelligence that the county court would not approve the conveyance of said land, had it been apprised of the true situation. In other words, the instruction told the jury that, if they should find that the contract was made in good faith with the sole and only purpose of compensating Mandler for his trouble in securing a purchaser of said land, then the jury could not find for the plaintiff for sum sued for. We think the instruction was more favorable to the defendant than the facts under the circumstances warrant. To hold otherwise would merely nullify the Act of Congress of May 27, 1908, c. 199, 35 Stat. 315, which is as follows:

"That the death of any allottee of the Five Civilized Tribes, shall operate to remove all restrictions upon the alienation of the said allottee's land; provided, that no conveyance of any interest of any full-blood heir in such land shall be valid, unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

This act of Congress was intended to protect the very class of persons among which the plaintiff is numbered, and, if it can be abrogated and set aside by an outside contract withheld from the knowledge of the county court as in the instant case, then it is absolutely worthless and would merely be as a "sounding cymbal of tinkling brass." It is our opinion that if said contract was made, even though in good faith, and the knowledge thereof was withheld from the court in order to secure its approval of the conveyance which the court would not approve with full knowledge of said contract, such act was a fraud upon the court, and said contract would be void and of no effect. The jury having found that said contract was made for the fraudulent purpose of securing the approval of the county court to circumvent the conveyance, and to circumvent the county court in its efforts to have what it conceived to be a fair consideration paid for said interest, and the evidence in the case reasonably tending to support said finding, disposes of this proposition, as well as the other assignment of error urged to the effect that even though said contract was void the payment by Washington to Mandler, having

been voluntarily made, could not be by him recovered. It is true that as a general proposition of law a party to an illegal contract cannot come into court and ask to be relieved therefrom. The parties being in pari delicto, the court leaves them where it finds them. However, there are well-settled exceptions to this rule: (1) Where public policy requires the intervention of the court; (2) where the parties are not in pari delicto; (3) where the law which makes the agreement unlawful was intended for the special protection of the party seeking relief. 9 Cyc. 550.

Although the parties are in pari delicto, yet the court may interfere and grant relief at the suit of one of them where public policy requires its intervention, even though the result may be that a benefit will be derived by a plaintiff who is in equal guilt with the defendant. Here the guilt of the parties is not considered as equal to the higher right of the public, and the guilty party to whom the relief is granted is simply the instrument by which the public is served. Thus it has been held that a grantor who has executed a deed pursuant to a lottery transaction may, in ejectment brought by him, set up the illegality of the conveyance, notwithstanding he is in pari delicto, as the statute for the suppression of lotteries, which declares such a conveyance void, can only be enforced by permitting the grantor to claim the invalidity of the transfer and obtain an annulment of the conveyance. Wooden v. Shotwell, 4 N. J. Law 789.

9 Cyc. p. 552. lays down the following rule:

"Where One Party is Protected by the Law.—The complaining party is especially protected by the law where the agreement is not illegal per se, but is merely prohibited, and the prohibition was intended for his protection, and in such case, not being in pari delicto, he is entitled to relief." Tootle v. Berkley, 57 Kan. 111, 45 Pac. 77; Mason v. McLeod, 57 Kan. 105, 45 Pac. 76, 41 L. R. A. 548, 57 Am. St. Rep. 327.

In case of Smart v. White, 73 Me. 332, 40 Am. Rep. 356, the court discussed the right of a pensioner who had been assisted by the overseer of the poor of the town in securing her pension under an agreement that when she received the same the same should be applied to her indebtedness to the city for her support. She did receive it and turn it over to the overseer for the benefit of the city, then afterwards brought suit to recover this back. The court, in discussing her right to recover back the sum voluntarily paid, says:

"But the plaintiff stands in a different attitude. If her pension money was taken from her through a contract declared to be void by the statute, she can have its res-

toration. She would be entitled to recover it back, even had she known the law, and a fortiori entitled, not knowing it. The parties do not stand in pari delicto. The penalty of the statute is leveled at him, and not at her. The punishment is to be inflicted upon the taker and not upon the giver. She is to be protected, not punished. Her ignorance of the law, or her folly, if not ignorant of it, is excusable; but his is not. He commits a wrong; she does not. She cannot defraud herself. The statute would be nullified by a different interpretation."

And so, in the instant case, to hold that because the money was paid by the plaintiff voluntarily to the defendant under a contract which had the effect, if not the purpose, of securing the approval of the county court to a conveyance divesting plaintiff of his property for a less consideration than the court would have approved had it been aware of all the conditions surrounding the transaction, would defeat the very purpose of the law and render powerless the court to afford the protection to this class of restricted Indians, which under the law it was charged with this responsibility. It has been held by this court and the Supreme Court of the United States that the very purpose of section 9 of the Act of May 27, 1908, was to prevent Indians from making improvident sales and to protect them against their own incompetency, by providing that no conveyance of an interest in inherited lands by such full-blood Indians would be valid unless approved in accordance with such act. The contract in question between plaintiff and defendant affected plaintiff's interest in inherited land, and this interest could not be conveyed by the plaintiff without the approval of the county court; which court had been constituted a governmental agent for such purpose in such cases, and, where said contract so affecting such interest was withheld from the knowledge of such governmental agency as was done in the instant case, it would necessarily render said contract void as between the parties and give the plaintiff the right to recover any sums of money paid under said contract, whether paid voluntarily or otherwise. The record in this case discloses that the county court would not have approved the deed in question if it had been apprised of such contract, because it had refused to approve the conveyance for the identical consideration which the Indian was receiving in the instant case on the ground that the consideration was inadequate.

We therefore hold that said contract is void and of no effect. It necessarily follows that this cause should be in all things affirmed, and it is so ordered.

By the Court: It is so ordered.