## UNITED STATES v. MOORE.

### (District Court, E. D. Oklahoma. November 1, 1919.)

### No. 2713.

1. JUDGMENT ☞702—PERSONS CONCLUDED; SUBSEQUENT ACTION BY UNITED STATES.

An action brought by an individual, though conclusive as to him when finally adjudicated, is not a bar to an action brought by the government in its governmental capacity, if the government has the authority to bring such action.

2. INDIANS ☞16(7)—DISPOSAL OF ROYALTIES UNDER MINING LEASE; ACTION BY UNITED STATES TO RECOVER.

Where an Indian allottee, authorized by statute to execute a mining lease for ten years, with the right to collect and dispose of the royalties accruing thereunder without restriction, paid over to defendant one-half of such royalties after they had accrued, either voluntarily or pursuant to judgments of a state court, she being at the time a citizen and subject to suit, the United States cannot maintain an action at law to recover such payments, although they were made pursuant to an assignment executed before the royalties accrued, and which was void and could have been canceled at suit of the government on behalf of the allottee.

At Law. Action by the United States against James K. Moore. Judgment for defendant.

W. P. McGinnis, U. S. Atty., and Alvin F. Molony, Sp. Asst. U. S. Atty., both of Muskogee, Okl.

Riddle, Bennett, Wilson & Mitchell, of Miami, Okl., for defendant.

WILLIAMS, District Judge. The patent referred to in plaintiff's petition, issued September 26, 1896, under Act Congress March 2, 1895 (28 Stat. 876, c. 188), contains the following clause:

"* * * But with the stipulation and limitation contained in the aforesaid act, that the land embraced in this patent shall be inalienable for the period of twenty-five years from and after the date hereof, to have and to hold the same, together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature thereunto belonging, unto the said Wat-tah-nohzhe and to his heirs forever, provided, as aforesaid, that said tract shall be inalienable for the said period of twenty-five years."

This is an action at law, commenced on September 2, 1917, after the expiration of certain leases which embraced the land described in said patent, and as to which the assignment of the royalties was executed, not for cancellation of said assignment affecting said land, but for recovery of moneys resulting from said royalties. The prayer of the plaintiff's petition is that—

"It have judgment against the defendant, James K. Moore, for the said sum of $40,061.44, together with appropriate interest thereon from the date of the receipt of the said sum, or any part thereof, for all other appropriate relief, and for its costs."

By Act June 10, 1896 (29 Stat. 331, c. 398), power for the allottee to lease such land for farming and grazing purposes "for a term not exceeding three years," and "for mining or business purposes" not to

exceed five years was granted.  By Act June 7, 1897 (30 Stat. 72, c. 3), a further authorization to lease for a term not exceeding 10 years for business or mining purposes was given.  Under this power, Wat-tah-noh-zhe made certain mining leases upon her allotment, under which there accrued as royalty, payable to said allottee, from and after July 18, 1907, and prior to April 10, 1915, the sum of $80,122.88.  On July 18, 1907, Wat-tah-noh-zhe, joined by her husband, Francis Q. Good-eagle, executed and delivered to James K. Moore assignment of one-half of the mining royalties to be derived from and under said leases, all of which expired by limitation by May 22, 1917, and said Moore has received $40,061.44 therefrom.  Said assignment of royalties was void and could be canceled by suit of the United States in behalf of the allottee.  United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844.  In United States v. Noble, 197 Fed. 292, 116 C. C. A. 654, the court said:

"They [Quapaws] were the owners of the lands subject to this restriction, and, when they were authorized to lease them for farming and grazing purposes for three years and for mining and business purposes for ten years, *that was a distinct emancipation of them for the periods and the purposes named, and for such periods the Government surrendered all guardianship over the Indians with reference to the specified leases of their lands.*" (Italics mine.)

The acts of 1895, 1896, and 1897—

"put it beyond the power of him [Quapaw allottee] or of them to alienate the land or any interest therein in any manner except as permitted by the acts of 1896 and 1897. * * * The comprehensiveness of the restriction was modified only by the power to lease; and while the allottee could make leases, as provided in these acts, they gave him no power to dispose of his interest in the land subject to the lease or of any part of it.  The rents and royalties were profits issuing out of the land.  When they *accrued* they became *personal property* [italics mine]. * * *" U. S. v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844.

In National Bank of Commerce v. Anderson, 147 Fed. 87, 77 C. C. A. 259, it is said:

"The purpose of the statute evidently is that lands inherited from deceased allottees, by heirs who had and were living upon allotments of their own, might be sold and converted into money, rather than remain untilled and unoccupied.  It may be admitted that if the intention of the statute is to terminate the trust as to all lands so sold, and to give the proceeds to the heirs free from restriction, the Secretary of the Interior had not the power to frustrate that intention in this instance by imposing the terms which were inserted in the petition for leave to sell, and that such terms, notwithstanding that they were assented to by the petitioners, were not binding upon them."

In United States v. Gray et al., 201 Fed. 291, 119 C. C. A. 529, it is said:

"It [United States] has capacity to sue to avoid conveyances made by Indian allottees in violation of restrictions upon alienation, although it has no pecuniary interest therein, or in the land conveyed.  It has this right to sue, because such conveyances violate its governmental rights and hinder or prevent the execution of its governmental policy. * * * On the same ground it may maintain suits to cancel leases procured from Indian allottees without the required approval of the Secretary of the Interior. * * *"

In United States Fidelity & Guaranty Co. v. Hansen et al., 36 Okl. 459, 129 Pac. 60 (Ann. Cas. 1915A, 402), paragraphs 2 and 3 of the syllabus are as follows:

"2. Where allotted lands of a deceased Indian were sold pursuant to the provisions of section 7 of the Indian Appropriation Bill of May 27, 1902, c. 888, 32 Stat. 275 [U. S. Comp. St. § 4223], the purchase price remained a trust fund so long as the United States government retained possession or control, but the trust character ended when the possession and control was relinquished by the government.

"3. Under the provisions of said act the government had the option either to retain the control of the purchase money or to end its trusteeship by relinquishing its control, and the Secretary of the Interior had the authority to exercise the option."

In Maudler v. Rains (Okl.) 174 Pac. 240, paragraph 2 of the syllabus is as follows:

"Where W., a full-blood Indian, makes a contract with M., wherein he agrees to pay M. all money in excess of a certain sum for which M. may sell his interest in an inherited allotment, and such contract is withheld from the knowledge of the county court, who has jurisdiction to approve such sale under Act Cong. May 27, 1908, c. 199, 35 Stat. 312, which contract had the effect, if not the purpose, of securing the approval of the county court to a conveyance for a less consideration than would have secured the approval of the court, had it been aware of the contract, would render such contract void as between the parties, and W. would have a right to recover any sums of money paid M. under said contract, whether paid voluntarily or otherwise."

There the action was between the full-blood member of the tribe, for himself, against the party receiving the money under the void contract.

[1] Here the action is brought by the government for the benefit of the allottee and member of the tribe. A judgment in an action brought by a member of the Quapaw Tribe, though conclusive as to him when finally adjudicated, is not a bar to an action brought by the government in its governmental capacity, if the government has the authority to bring such action. Wiley v. Edmondson, 43 Okl. 7, 133 Pac. 38; Bowling et al. v. United States, 191 Fed. 19, 111 C. C. A. 561; Heckman et al. v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820.

[2] This action at law is to recover moneys paid to defendant, said payments having been made either by the allottee, Wat-tah-noh-zhe, or her agents, "now pursuant to and in consequence of said assignment," the consideration received by said allottee from said defendant for said assignment being $1,000, which she still retains, nor has any offer been made to return same to him.

At the time the said allottee and her husband executed and delivered to the defendant the assignment of royalties, there had been some drilling upon her allotment, some of the holes showing ore; but the defendant did not know of any assays of the cuttings taken from said holes. Only one shaft on said land was down to the ore about one foot into a light grade of ore where further progress was seriously hampered by water. The defendant had taken no part in the drilling or development. When the royalties first began to accrue unto said Wat-tah-noh-zhe under said mining lease or leases, she paid to the defendant, out of such royalties as the same were received by her, a sum equal to 2½ per cent.

upon said ores which had been taken from said lands and sold, and in this manner down to July 7, 1907, she had paid to the defendant the sum of $3,462.37. From July 7, 1909, until March 17, 1913, no further payments were received by the defendant. In the meantime the lessee° or lessees withheld the royalties claimed by defendant on account of said assignment, and deposited the same in the First National Bank of Miami in the name of Wat-tah-noh-zhe, to be held subject to the claim of the defendant.

On June 13, 1911, the defendant filed in the district court of the state of Oklahoma for Ottawa county an action against Wat-tah-noh-zhe, Francis Q. Goodeagle, her husband, C. M. Harvey, Baxter Royalty Company of Arizona, Baxter Mining Company, Baxter Royalty Company of Oklahoma, and J. F. Robinson, setting up said assignment of royalties and alleging that the defendants had conspired together to deprive him of his said royalties under said assignment, and asking for appointment of receiver to collect and hold said royalties accruing under said assignment, and praying for an accounting and that he be adjudged to be the owner of such royalties. W. H. Trapp was appointed receiver, and as such receiver collected $3,550.60 as royalties. On March 17, 1913, by stipulation on the part of the plaintiff and defendants, judgment was rendered in said action, adjudging the plaintiff (defendant herein) to be the owner of said royalties in said sum, and decreed that he was entitled to said $3,550.60, and said sum was paid to the plaintiff (defendant herein) by the receiver on said date "with the consent and in accordance with the stipulation of said Wat-tah-noh-zhe," and said sum is a part of the money sued for and sought to be recovered in this action.

On June 13, 1911, the defendant, as plaintiff, commenced an action in the district court of Ottawa county, state of Oklahoma, No. 545, against Wat-tah-noh-zhe, Francis Q. Goodeagle, her husband, First National Bank of Miami, C. M. Harvey, and J. F. Robinson to recover the unpaid royalties accrued under said royalty assignment since May 1, 1909, such royalties having been deposited in said bank as aforesaid. On April 21, 1913, stipulation was filed in said cause, signed by W. H. Kornegay, as attorney for the said plaintiff (defendant herein), J. K. Moore and S. C. Fullerton, attorney for the First National Bank of Miami, and A. Scott Thompson, attorney for Wat-tah-noh-zhe, Francis Q. Goodeagle, J. F. Robinson, and C. M. Harvey, that said action should be dismissed at the plaintiff's cost and that the money in the hands of the defendant bank at the close of business of April 18, 1913, to the credit of Wat-tah-noh-zhe, in the sum of $17,882.10, should be paid to the plaintiff, James K. Moore (the defendant herein). Said cause was accordingly dismissed and the said sum of money was paid by said bank to the said plaintiff (herein defendant), James K. Moore, "upon the stipulation and by the directions of the said Wat-tah-noh-zhe," and said sum is a part of the money sued for and sought to be recovered in this action.

"The balance of the moneys sued for and sought to be recovered in this cause were paid to the defendant by the lessees under the Robinson and Harvey lease, or their assigns, with the full knowledge and consent and without any

objection from the said Wat-tah-noh-zhe; * * * the last of said payments being made on or about the 10th day of April, 1915."

In Goodrun et al. v. Buffalo, 162 Fed. 817, 89 C. C. A. 525, the judgment under consideration was rendered in 1899. In the opinion it is said:

"The Indian who consented to the stipulation for submission to the judgment of the court for such purpose was not a person sui juris. The submission required, as the very basis of its recognition, the acquiescence and consent of the Indian thereto. The effect of the act of Congress, under which the patent was granted, was to deny to the Indian the exercise of any consent whereby the restriction upon the power of alienation could be removed. If the Indian could create no estoppel against himself or herself by deed of conveyance, how could he or she create an estoppel. by consenting to a judgment as the basis of an estoppel, effectual to alienate the land, in direct contravention of the act of Congress? The allottees of these lands, during the probationary period of 25 years, were under as much disability to alienate them by contract, or deed, or voluntary submission to a court, as if they had been under the disability of coverture or minority. The disability of the minor to do these things is imposed by the common law. The disability of these Indians is imposed by statute. It must therefore logically and necessarily follow that the record and judgment of a court, disclosing on their face that the disqualified Indian was entering into an agreement for submission of the question of his right to dispose of these lands, was in no wise different from such a proceeding participated in by a minor infant."

Members of the Quapaw Tribe of Indians became citizens of the United States on March 3, 1901. 31 Stat. c. 868, p. 1447. See, also, Wiley v. Edmondson, 43 Okl., at page 5, 133 Pac. 38. In Goodrun et al. v. Buffalo, supra, the Quapaw Indian was neither a citizen of the United States nor did he have power to alienate such land within the 25-year period—was held not to be a person sui juris or capable of assenting to such submission.

In the case at bar the Quapaw Indian is authorized to execute the mining lease for a period not exceeding 10 years, and to collect the royalties and spend them or dispose of them as she may elect. Under the agreed facts as to the money sued for, $3,462.37 had been paid by the lessee or lessees as royalties or rentals to Wat-tah-noh-zhe in person, and then she paid said amount to the defendant; $21,432.70 had been placed by the lessee or lessees to her credit in the First National Bank of Miami, Okl., to be held subject to the claim of the defendant; and by her agent it was thereafter stipulated that said bank should pay the same to the defendant. The balance, to wit, $15,166.37, was paid by the lessee or lessees to the defendant "with the full knowledge and consent, without any objections from the said Wat-tah-noh-zhe." She had the capacity to consent for said sum of $15,166.37 to be paid to defendant after such royalties or rents had accrued. Wat-tah-noh-zhe is sui juris, or capable of suing or being sued, and where the court has jurisdiction of her person, as well as the subject-matter, such judgment would be binding on her. But, if it related to a matter in such a way as to violate its governmental policy, the United States may bring an action to have the same adjudicated in its own courts, and such prior judgment against her would not be a bar to such action brought for her benefit by the government. But the lease was not made in violation of any act of Congress, nor is there any act of Congress authorizing fed-

eral regulations that would prevent Wat-tah-noh-zhe from disposing of in any manner she saw fit such royalties or rentals after the same had accrued and became personalty.

This is not an action to cancel the assignment on the ground that it attempts to transfer royalties and profits from restricted land which have not accrued. Nor is it such an action for cancellation and an accounting. United States v. Hinkle et al. (by Eighth Circuit Court of Appeals) 261 Fed. 518, —— C. C. A. ——. Such claimed royalties and profits had accrued and were paid by her or her lessee to the defendant, or by the lessee's agent to the defendant with her knowledge and consent after same had accrued, and had under all events become personal property when paid to the defendant. The Secretary of the Interior had no power or authorization to approve the form of the lease or to exercise supervision over the execution of the same or the collection of the royalties and rents thereunder. As to such mining leases not exceeding the term of 10 years, Wat-tah-noh-zhe was free from restrictions or supervision of the Secretary of the Interior, and is remitted for remedy to the laws of the state of Oklahoma governing the collection of rents and royalties and profits after the same have accrued. Dickson v. Luck Land Co., 242 U. S. 371, 37 Sup. Ct. 167, 61 L. Ed. 371; United States v. Waller et al., 243 U. S. 452, 37 Sup. Ct. 430, 61 L. Ed. 843; United States v. Nice, 241 U. S. 591, 36 Sup. Ct. 696, 60 L. Ed. 1192.

As to such leasing, the United States gave to this allottee an emancipation to the extent of leasing such allotments for a term not exceeding 10 years for mining purposes without any supervision. When this allottee received the money, either in person or through her agent, and paid it to this defendant, that was an emancipated act, over which the plaintiff had no supervision. Act June 7, 1897 (30 Stat. 72), after granting the additional authorization for leasing the allotted lands for not exceeding 10 years for mining or business purposes, provides:

"That whenever it shall be made to appear to the Secretary of the Interior that, by reason of age or disability, any such allottee can not improve or manage his allotment properly and with benefit to himself, the same may be leased, in the discretion of the Secretary [of the Interior], upon such terms and conditions as shall be prescribed by him."

It is not contended that the Secretary of the Interior by virtue of said section has determined that the said Wat-tah-noh-zhe "by reason of age or disability could not" improve or manage his (her) allotment properly and with benefit to himself (herself). If such were the case, then the supervision as to such leasing and the collecting of royalties having been resumed by the Secretary of the Interior the question would arise as to whether the United States government may not maintain for her benefit an action concerning the transactions of the said Wah-tah-noh-zhe concerning such leasing and royalties collected during such emancipated period. U. S. v. Fitzgerald, 201 Fed. 295, 119 C. C. A. 553; U. S. v. Gray et al., supra; U. S. v. Boylan (D. C.) 256 Fed. 469; Regulations for Leasing as to Such Incompetents Approved April 7, 1897. That question is neither presented by the record nor here considered.

The case of United States v. Apple et al., 262 Fed. 200 (No. 110

Equity, United States Court for District of Kansas, Third Division), by Judge Pollock, has come to our attention. The power of attorney therein involved related at least to some not accrued royalties, and the transactions therein sought to be revised and accounted for were incidental to said instrument. Further, it is obvious that the Secretary of the Interior had determined that the two Indian lessors, members of the Quapaw Tribe, were incompetents within the terms and authority of the act of April 7, 1897, supra. In the opinion it is said:

"* * * The government contends and urges the Indian lessors were both in fact and law incompetent to make a valid mining lease of said properties without the approval of the accredited representative of the government."

The question as to whether the government may maintain an action to cancel the assignment, and for an accounting, after the leases have expired, has not been presented, and is not considered.

An order will be entered in accordance with this opinion, rendering judgment in favor of the defendant.