[Civ. A. No. 95915.   Appellate Department, Superior Court, County of San Diego.—May 16, 1939.]

HAZEL M. LEWIS, Appellant, v. AMBROSE FERRARI, Respondent.

Davies, Wallace & Wallace for Appellant.

Fitzgerald & Selleck for Respondent.

HAINES, P. J.—This is an appeal upon the judgment roll. The facts, as found by the municipal court, are, in brief, as follows:

From November 1, 1936, to October 2, 1938, the appellant, who is an adult woman, was employed by the respondent as an experienced retail clerk in a place of business operated by him at San Diego, California, known as "The Liquor House". She voluntarily worked therein more than 48 hours per week and was paid $16 per week for her work. The reasonable value of her overtime work was 33⅓ cents

per hour. From November 1, 1936, until February 1, 1938, the respondent employer did not keep, in a form and manner approved by the industrial welfare commission, any record of the number of hours worked or the amounts earned by appellant. On or about February 1, 1938, however, respondent furnished appellant a time book for the purpose of keeping a record of the number of hours worked by appellant. Respondent directed appellant to keep a record in the book which should show that appellant worked only 48 hours per week. He also directed her to state to any person who inquired that she worked only a maximum of 48 hours a week. In compliance with respondent's directions appellant from February 1, 1938, to October 1, 1938, made entries in the time book purporting to show that she worked only 48 hours per week. Both appellant and respondent knew that such entries were untrue.

As a conclusion of law the trial court found that by voluntarily working with respondent's knowledge for longer hours than the statute permits, appellant was *in pari delicto* with respondent and, therefore, not entitled to recover from him anything for her overtime work. Judgment was entered for respondent accordingly and the present appeal followed.

Since only the judgment roll is before us we are unable to resort to the evidence adduced before the trial court. In support of the appeal two positions appear to be relied upon, that is: *first*, that as between the appellant and the respondent the former was in the subordinate position; that her continued employment was necessarily dependent upon her conforming to respondent's wishes and directions and, therefore, that she cannot be said to have been *in pari delicto* with him; and, *second*, that she cannot be held to be *in pari delicto* for the further reason that she is a member of a class for whose benefit the statute was enacted and that in denouncing a penalty for its violation against the employer only (Labor Code, sec. 1354) the legislature has recognized a distinction between the situation of employer and employee, treating the former alone as the perpetrator of the offense and the latter merely as its victim.

(1) It may frequently happen that an employee is, as compared with the employer, in a distinctly unfair position in that his or her continued employment depends on the employer's volition and such employee may be unable

for the time at least to find other suitable employment and be thus in effect constrained to conform to the employer's wishes though they be in some respect unlawful. (*Holden* v. *Hardy*, 169 U. S. 366, 397 [18 Sup. Ct. 383, 42 L. Ed. 780].) It would, however, as we think, be going too far to hold that such a situation must, as a matter of law, always and necessarily result from the mere circumstance that a statutory regulation has been infringed and that the relation of employer and employee exists. (*Thibault* v. *National Tea Co.*, 198 Minn. 246, top of page 248 [269 N. W. 466, 467].) In other words, the determination whether or not there has been such constraint does not rest on any presumption declared by the law to result from the fact of employment. ▮ That there has, in a given instance, been such constraint, where it is not established by direct evidence, may, at the most, be inferred from the circumstances. In the present case the trial court has not only not drawn any such inference from the evidence before it, but has found the fact to be otherwise—namely, that the overtime work was ''voluntary''. Since the plaintiff has not brought up the evidence, we are unable to say that it was insufficient to support this finding, which is tantamount to a finding that there was no constraint.

(2) We come, then, to the other position, namely, that, even in the absence of actual constraint, the plaintiff is not to be penalized for participation in the violation of a statute designed for her own protection. In support of this position various expressions have been called to our attention. Thus, it was said in the note to *Levinson* v. *Boas*, 150 Cal. 185 [88 Pac. 825, 11 Ann. Cas. 661, in 12 L. R. A. (N. S.), 575, 619], that:

''The general rule that Courts will not enforce contracts prohibited by statute, nor allow money or property paid or delivered in pursuance of them to be recovered back, does not apply to the innocent party for whose protection the statute was enacted.'' (Citing *Mason* v. *McLeod*, 57 Kan. 105 [45 Pac. 76, 57 Am. St. Rep. 327, 41 L. R. A. 548].)

Neither *Levinson* v. *Boas*, *supra*, nor *Mason* v. *McLeod*, *supra*, involved any labor statute, the former case involving a pawnbroker who had undertaken to do business without procuring the required license and the latter case involving a contract for the sale of a patent made in violation of a law

requiring the vendor to file with the clerk of the District Court an affidavit of the genuineness of his patent and of its remaining unrevoked.

The note referred to is, however, quoted with approval in *Turney* v. *J. H. Tillman Co.*, 112 Or. 122, 129 [228 Pac. 933], which was a case in which the court held that a contract of employment of a workman on a state job in excess of eight hours a day in violation of the statute of that state was not void so far as the employee was concerned so as to prevent recovery for overtime labor, notwithstanding that the statute had made its violation by an employer a misdemeanor. The court there held the statutory provisions to have been made for the benefit of employees. As possibly bearing out this construction, it may be noted parenthetically that the Oregon statute had excepted from the inhibition of overtime work the case of an "emergency when no other competent labor is available" and provided that in such circumstances double wages should be paid for the overtime. It is to be further noted that this Oregon case had to do with employment on a state job, where the state was in contractual relations with the employer, who was, in some sort, its mandatary, and that as was expressly recognized in the decision, the case proceeds in considerable part upon the theory that the state might rightfully attach such conditions as it should see fit to the use of its own funds (as to which see, also, 39 Cor. Jur., pp. 59, 60, sec. 39, and cases cited under note 7).

Apart from this Oregon case of *Turney* v. *J. H. Tillman Co.*, however, and the particular facts there involved, it is true, as laid down in general terms in *Smith* v. *Bach*, 183 Cal. 259, 263, 264 [191 Pac. 14], that:

"There are authorities which, while not denying the general rule that an illegal contract cannot be enforced whether *malum in se* or *malum prohibitum,* hold that all the consequences which attend a contract contrary to public morals do not attend one which is purely *malum prohibitum,* and that in the latter case courts will take notice of the circumstances and will give relief if justice and equity require a restoration of money received by either party thereunder. (13 Cor. Jur., p. 411, sec. 341.) In such a case the complaining party is protected, the prohibition being for his benefit, and not being *in pari delicto* he is entitled to relief. (Id., p. 501, sec. 443.) . . . By the weight of authority where

money has been paid in consideration of an executory contract which is illegal, the party who has paid it may repudiate the agreement at any time before it is executed and reclaim the money. In such a case it is the duty of the court in furtherance of justice to aid one not *in pari delicto,* though to some extent involved in the illegality, but who, as here, is comparatively the more innocent, and to permit him to recover back money paid on a contract as the circumstances of the case may require. (Pomeroy's Equity Jurisprudence, 3d ed., sec. 942; *Gray* v. *Roberts,* 2 A. K. Marsh. (Ky.) 208 [12 Am. Dec. 383, 385]; *Wassermann* v. *Sloss,* 117 Cal. 425, 431 [59 Am. St. Rep. 209, 38 L. R. A. 176, 49 Pac. 566]; *City of Los Angeles* v. *City Bank,* 100 Cal. 18 [34 Pac. 510]; *Savings Bank of San Diego County* v. *Burns,* 104 Cal. 473, 480 [38 Pac. 102]; *Manchester & L. R. R. Co.* v. *Concord R. R.,* 66 N. H. 100 [49 Am. St. Rep. 582, 589, 9 L. R. A. 689, 20 Atl 383]; 13 Cor. Jur., p. 501, sec. 444.)''

The particular statute the violation of which was involved in *Smith* v. *Bach, supra,* was that forbidding the making of sales of land by reference to unrecorded maps. What the court decided was that, though a contract of sale and purchase disregarding the inhibition was void and unenforceable, yet that a payment made under it might be recovered by the intended vendee, he being, though involved in the illegality of the contract, held less culpable than the vendor because the statute was conceived to be designed for his protection. With respect to this decision it is to be observed that it neither resulted in an enforcement of the contract nor in conferring on either party any of the benefits which would or might have resulted from the contract had it been a valid one; but merely restored the intended vendee to his *status quo ante.* It goes without saying that, the contract being illegal, the court would have refused to decree its specific performance, had the vendee sought that, regardless of the circumstance that it treated him as not being altogether *in pari delicto* with the vendor.

It seems to us evident, moreover, that a large degree of caution must be exercised in the extent to which the courts shall go in applying the theory that one to whom the benefit of a police regulation inures is necessarily its beneficiary in any such exclusive sense as to entitle him to waive its

provisions and to exonerate him from the consequences of being a voluntary party in its violation. Where, as in the case of some of the federal enactments, an inhibition against causing or permitting an employee to work more than a specified time in course of a day or week, with or without making the violation of the restriction by the employer criminal, is accompanied by a provision permitting the employee to recover for such overtime work, an intention is, of course, evinced, to treat such employee as in a lesser degree to blame, if to blame at all, for the violation of the statute. How far, if at all, such attempted distinction is valid we need not inquire as it is not made in the statute before us. The only distinction here expressed as between the employer and employee involved in ·the forbidden arrangement for overtime work is that the former is subjected to a criminal liability while the latter is not. We do not think that this statute ought to be held to be designed for the exclusive benefit of the employee. Police regulations are not ordinarily enacted for the benefit either of individuals or of any selected classes of individuals. They are in their nature restrictions on liberty and as such ordinarily designed to bear some reasonable relation to the welfare of the whole community. There may, indeed, be cases where certain classes of individuals are so situated as to be subject to particular disadvantages sufficient to require police regulations in their favor to insure to them legal rights in some sort commensurate with those enjoyed by the community at large. ▮ But generally speaking where police regulations are made undertaking to protect some particular class of persons, such protection is accorded because the welfare of such class of persons is conceived to be bound up with the welfare of the community as a whole. Particularly is this the case with women as a class. The circumstance that the restriction of their hours of labor inures to their benefit does not militate against its beneficial effect through them on the health and welfare of the community as a whole. When, therefore, a particular woman, participates in the violation of such a regulation, it seems to us fallacious to argue that she is justified in so doing because the regulation is meant for her benefit and she has a right to waive the benefit. We hold that she has no such right. The benefit is one intended for the community of which she is but a single member, and the circumstance that she may be one of the members of the community espe-

cially benefited by the regulation affords her no justification for violating it. Actual coercion or circumstances amounting in effect to the same thing may in some degree *excuse* her participation in its violation but that is not the same thing as *justifying* it.

What we have just said finds confirmation in such decisions as that of the Supreme Court of Utah in *Short* v. *Bullion-Beck & Champion Min. Co.*, 20 Utah, 20 [57 Pac. 720, 45 L. R. A. 603], involving a statute which forbade the employment of miners for more than eight hours a day upon underground work, though it denounced penalties therefor only against employers. The Utah Supreme Court upheld a judgment denying to an employee who worked underground for longer hours any recovery for the overtime. It approved an expression by the trial court to the effect that:

"The question is . . . whether, under the law, such a contract is invalid as to the employee. We think in law and in reason it is. It is void as to him first, for the reason that he is impliedly forbidden to make such a contract; second, because when he enters into a contract of this nature he knowingly and voluntarily assists the employer to violate the law; he becomes in effect a *particeps criminis* with the employer, for it is patent that with no employee willing to make such a contract the employer is powerless to act."

The Supreme Court went on to say:

"We are further of the opinion that the right to waive this legislative protection is without the power of the employee. The law is in the nature of a state police regulation. Its object is the good of the public as well as of the individual. The protection to the State cannot at will be waived by any individual an integral part thereof. The fact that an individual is willing to waive his protection cannot avail. The public good is entitled to protection and consideration, and if in order to effectuate that object there must be enforced protection to the individual, such individual must submit to such enforced protection for the public good."

■ With these views we are in entire accord. Moreover if an express contract in contravention of the statute is for the reasons stated void, it is equally plain that the law will not from voluntary overtime work raise an implied contract to pay the reasonable value of the overtime. Such an implied contract would be as contrary to the purposes

of the statute as an express contract. Indeed that sought to be enforced in *Short* v. *Bullion-Beck & Champion Min. Co., supra,* appears itself to have been of this character, the action having been on a *quantum meruit.*

We recognize that circumstances may exist where, by reason of coercion actual or virtual, an employee though not *justified* may be in some sort *excused* for failure to observe the statutory limitation upon hours of work, and may not, therefore, be *in pari delicto* with the employer in violating the statute. The findings of the trial court, however, by which we are here bound, exclude the instant case from that category, because they determine that the overtime work was on appellant's part voluntary. If it was voluntary it' was not excusable.

The judgment is affirmed.

Mundo, J., and Thompson, J., concurred.