No. 37,036

JOHN A. KREIMER, JOSEPH KREIMER, and AUGUST J. HABIGAR, *Appellants*, v. MIDLAND INDUSTRIES, INC., *Appellee*.

(188 P. 2d 660)

Opinion filed January 24, 1948.

*Frederick G. Apt,* of Iola, argued the cause, and *Mitchell H. Bushey* and *Howard M. Immel,* both of Iola, were with him on the briefs for the appellants.

*Donald W. Stewart,* of Independence, argued the cause, and *Guy Lamer,* of Iola, and *David H. Scott,* of Independence, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action to enforce specifically the provisions of the contract. The trial court sustained a demurrer to plaintiffs' petition and they have appealed.

In the petition, filed April 18, 1947, plaintiffs allege that they reside at Piqua, Kan.; that defendant is a corporation organized under the laws of Kansas and is the corporate successor to Midland Investments, Inc.; that on February 13, 1944, and for a long time prior thereto, plaintiffs were engaged in the manufacture of toys at Piqua as a copartnership under the name of Habigar and Kreimer Toy Company, and were manufacturing a toy known as "The Marvel Interlocking Building Brick"; that on February 13, 1944, the corporation, as party of the first part, and plaintiffs as parties of the second part, entered into a written agreement, attached to the petition, the pertinent portions of which are as follows:

"Whereas Party of the second part had developed, manufactured and have patents applied for on a toy block known as the Marvel Interlocking Building Brick, said parties of second part are this day for the sum of Ten Thousand Dollars ($10,000.00) to sell and convey all their right and title which includes the design of special machines used in manufacturing the said building brick,

as well as all other privileges in connection with its manufacture and sale to the Midland Investments, Inc., party of the first part.

"This sum is to be paid at the rate of ten cents (10c) for each set of the said building bricks manufactured and sold by party of the first part. These payments will be made on the first day of each month based on sale for the previous month until the total amount of Ten Thousand Dollars ($10,000.00) is paid.

"The party of the first part agrees that they will employ John A. Kreimer to construct the machinery necessary to manufacture this building brick and will diligently expedite purchases of all material necessary to start construction and sale at the earliest possible date. The party of the first part also agrees that sales will be sufficient to pay the consideration of this contract over a period of three (3) years in payments of not less than $2,000.00 in 1944, $3,000.00 in 1945, and $5,000.00 in 1946. If payments are not made by party of the first part according to the schedule above the Midland Investments, Inc., will then give any title or interest to the Marvel Interlocking Building Brick conveyed by this Agreement."

It was further alleged that upon the execution of the agreement defendant received from plaintiffs all right, title and interest in said building brick, as in the contract and agreement provided, and commenced the manufacture thereof at its plant at Independence; that defendant made payments to plaintiffs on the contract, $500, March 1, 1945; $363.70, August 1, 1945; and $136.40 on December 1, 1945; making a total of $1,000.10, for which defendant is entitled to credit; that no further payments have been made on the contract, and defendant has failed to give and reconvey the title held by it in and to Marvel Interlocking Building Brick, and that by reason of such failure there is due plaintiffs from defendant the sum of $8,999.90 with interest since February 13, 1947, and plaintiffs are entitled to a decree directing defendant to reconvey to plaintiffs all its right, title and interest in and to the Marvel Interlocking Building Brick; and plaintiffs pray for this relief. The petition did not allege compliance with the statutes hereinafter mentioned.

Defendant demurred to plaintiffs' petition upon the ground that the same does not state facts sufficient to constitute a cause of action in that it fails to disclose compliance with the provisions of our statute (G. S. 1935, 57-101 to 57-103). The sections of the statute referred to in the demurrer read:

"It shall be unlawful for any person to sell or barter or offer to sell or barter any patent right, or any right which such person shall allege to be a patent right, in any county within this state, without first filing with the clerk of the district court of such county copies of the letters patent duly authenticated, and at the same time swearing or affirming to an affidavit before such clerk

that such letters patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter the right so patented; which affidavit shall also set forth his name, age, occupation and residence; and if an agent, the name occupation and residence of his principal. A copy of this affidavit shall be filed in the office of said clerk, and said clerk shall give a copy of said affidavit to the applicant, who shall exhibit the same to any person on demand.

"Any person who may take any obligation in writing for which any patent right, or right claimed by him or her to be a patent right, shall form a whole or any part of the consideration, shall, before it is signed by the maker or makers, insert in the body of said written obligation, above the signature of said maker or makers, in legible writing or print, the words, 'Given for a patent right.'

"Any person who shall sell or barter or offer to sell or barter within this state, or shall take any obligation or promise in writing for a patent right, or for what he may call a patent right, without complying with the requirements of this act, or shall refuse to exhibit the certificate when demanded, shall be deemed guilty of a misdemeanor, and on conviction thereof before any court of competent jurisdiction shall be fined in any sum not exceeding one thousand dollars, or be imprisoned in the jail of the proper county not more than six months, at the discretion of the court or jury trying the same, and shall be liable to the party injured, in a civil action, for any damages sustained."

With commendable frankness counsel for appellants do not attack the validity of these statutes, but cite *Mason v. McLeod*, 57 Kan. 105, 45 Pac. 76, and *Allen v. Riley*, 203 U. S. 347, which decisions sustain the validity of the statute. Counsel also cite a number of our own decisions holding that the statute applies where a contract is made with respect to a patent which had been applied for to the same effect as to a patent which had previously been issued. Most of our earlier decisions are collected in *Sage v. Oil Country Specialties Mfg. Co.*, 138 Kan. 501, 27 P. 2d 542.

Counsel argue, however, that a person has a common-law right to make something and to sell the article he makes irrespective of the statute, and that our statutes should not be so construed as to prevent him from doing so. The general statement may be conceded, but where, as here, the sale is for an article—for which patent has been applied—which calls for the payment of royalties upon the manufactured product and its sale, and provides for the ultimate payment of a sum which certainly would be much more than the value of any ordinary toy, we think the principle stated by counsel has no application.

Counsel for appellants point out that while the term "patent

right" is not defined by statute, a patent issued by the general government for a patentable article confers an exclusive right for a limited time upon the holder to manufacture and sell the article, and contends that this instrument does not purport to convey the exclusive right, citing some of our cases where an assignment of the letters patent is for a limited territory only and purports to give the exclusive right within that territory. But in *Waterman v. Mackenzie*, 138 U. S. 252, 255, cited by appellants, it was said:

"The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by those laws. The patentee or his assigns, may, by instrument in writing, assign, grant and convey, either, 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States."

Our interpretation of the contract here involved is that the intention of the plaintiffs, as vendors, was to convey all their right, title and interest in and to the article for which the patent had been applied; in other words, that it was the sale of an exclusive right to manufacture and vend the article anywhere within the United States.

We find no error in the record. The judgment of the court below is affirmed.