SYLVESTER NYHART V. CHARLES KUBACH *et al.*

No. 15,100.   (90 Pac. 796.)

SYLLABUS BY THE COURT.

1. PATENT-RIGHT—*Sale—Registration.*   A contract by which the owner of a patent-right conveys to another the exclusive right to sell the patented article within certain prescribed territory for a term of years is a sale of such an interest in a patent-right as brings the transaction within the provisions of the act relating to the registration and sale of patent-rights and prescribing a penalty for the violation thereof.

2. —— *Territorial Lease—Agency—Sale Effected.*   A so-called territorial lease and appointment of agency held to be a contract for the sale of a patent-right within the provisions of sections 4356, 4357 and 4358 of the General Statutes of 1901.

3. PROMISSORY NOTES — *Want of Consideration — Rights of Maker.*   Promissory notes given as a consideration for the sale of a patent-right, where the owner of the patent-right failed to comply with the provisions of the statute relating to the registration and sale of patent-rights, are void as between the parties, and where they have passed into the hands of innocent purchasers the maker may maintain an action to recover from the payee the amount of such notes and interest.

Error from Dickinson district court; OSCAR L. MOORE, judge.   Opinion filed June 8, 1907.   Reversed.

*E. C. Little,* and *Waggener, Orr & Challiss,* for plaintiff in error.

*C. S. Crawford,* for defendants in error except Louis Nyhart.

The opinion of the court was delivered by

PORTER, J.:   Plaintiff brought this action to recover damages in the sum of $600, and interest, being the amount of three promissory notes which he claims to have executed and delivered to defendants in consideration of a void contract for an interest in a patent-right, and which notes it is claimed defendants transferred to innocent holders.   The court sustained a gen-

Nyhart v. Kubach.

·eral demurrer to the petition, and plaintiff, having elected to stand upon his petition, brings error. .

The petition alleges that the National Fence Machine Company is a corporation with its principal place of business at Abilene, Kan.; that defendant Charles Kubach is its general manager; that in July, 1903, plaintiff and defendants entered into the following written contract:

"NATIONAL FENCE MACHINE COMPANY
OF ABILENE, KAN.,
SOLE OWNERS AND MANUFACTURERS OF THE NATIONAL
FENCE MACHINE, ·
PATENTED JANUARY 3, 1903, No. 489,139.

"TERRITORIAL LEASE.

"*Know All Men by These Presents:* That the National Fence Machine Company of Abilene, Kan., has this day, July 31, 1903, appointed Sylvester Nyhart and son of Atchison, Kan., their true and lawful general agent to sell their national fence machine, at wholesale and retail, in the following territory, to wit: Doniphan, Brown, Nemaha, Marshall, Pottawatomie and Jackson counties, state of Kansas.

"*This Indenture Witnesseth:* That for the sum of $600, receipt of which is hereby acknowledged, the National Fence Machine Company of Abilene, Kan., hereby agrees to give, and does give the party of the second part six sample machines and the agency for the sale of the national fence machine for the term of six years in the above territory. The company hereby agrees to furnish all machines ordered by said agent at two dollars and fifty cents ($2.50) each on board cars at factory, when ordered each machine to be made in a good, substantial and workmanlike manner. The agent shall make a report to the company at the end of each month. The company hereby further agrees to take notes for machines when same are quoted good by local bank.

Ship machine to order.        By CHAS. KUBACH, *Mgr.*
Address all correspondence to        SYLVESTER NYHART.
The National Fence Machine Co.,  .        LOUIS NYHART."
  Abilene, Kan.

The petition alleges the execution of the notes and their transfer to innocent holders; that Louis Nyhart,

plaintiff's son, was only nominally interested in the contract; that the so-called territorial lease was a mere scheme for the purpose of avoiding the provisions of the statute making unlawful a sale of a patent-right in any county unless the person selling the same shall first file with the clerk of the district court of the county where the sale is made duly authenticated copies of the letters patent, with an affidavit showing that the letters patent are genuine and have not been revoked or annulled and that such person has the right to convey, and for the further purpose of avoiding the requirement of the statute that the person taking any obligation in writing in payment for such sale shall insert therein, before the same is signed, the words "given for a patent-right." The failure of defendants to comply with any of the provisions of the statute is alleged. Plaintiff in his petition offered to return the six sample machines referred to in the contract.

The theory upon which the petition is drawn is that the contract constituted a sale of a patent-right within the words of the statute (Gen. Stat. 1901, §§ 4356-4358), and, being in violation of the statute, the contract is void.

Defendants contend, first, that the contract is not for the sale of a patent-right, but merely a sale of six sample machines and the appointment of plaintiff as agent with the right to sell under defendants' direction and control.

The only suggestion of direction or control over the conduct of plaintiff is the provision that he shall report to the company at the end of each month, which would naturally be for the company's own information and benefit. The so-called agency was not the ordinary one where employment on the one side and promise of service on the other is the only consideration. It was not revocable at the will of the principal, and the consideration was the notes given by plaintiff. Nor was the contract a lease. The form of the instrument is of no importance; the substance determines the true na-

ture of the transaction. As observed in *New v. Walker,* 108 Ind. 365, 9 N. E. 386, 58 Am. Rep. 40, "schemes, however cunningly contrived, or subterfuges, however ingeniously devised, will not enable the vendor of the patent-right to evade the statute." (Page 370.) The six machines, according to the contract, were worth $2.50 each. The main part of the consideration for the notes, therefore, was the right to sell a patented article within the six counties for the period of six years.

It is vigorously contended that the company did not by the contract deprive itself of any substantial interest in the patent itself, and that therefore it was not a sale of a patent-right. Literally, the sale of a patent-right is the sale of the interest of the patentee or owner of the letters patent, and is consummated generally by a transfer of the letters patent. It is universally recognized, however, that a sale of the rights conferred by the letters patent within a certain territory is a sale of a patent-right. And where the owner sells the right to use and to manufacture for sale and use during only a portion of the life of the patent and for a prescribed territory it is a sale of a patent-right. These propositions are so well recognized that it would be useless to cite authorities. Under a statute practically identical with ours it was held, in *New v. Walker, supra,* that a contract transferring the right both to manufacture and sell was the sale of a patent-right, although there was in fact no sale of the patent itself.

Here was a sale of the exclusive right to sell for a period of six years within certain territory the thing patented, as much so as though the word "exclusive" had been written in the contract. The only right within that territory reserved to the owner under the letters patent was the right to manufacture and the remaining interest in the patent after the expiration of six years. The privilege of manufacturing an article may be of very slight value compared to the right to vend and sell. Whatever it was that was transferred

by the contract, it was something which the company claimed to have the right to sell by virtue of the letters patent. If it lacked full authority to sell what it sold, or possessed none for the reason that the patent had been revoked or annulled, the purchaser would be injured by the very fraud and imposition against which the statute was designed to protect him. (*Mason v. McLeod,* 57 Kan. 105, 45 Pac. 76, 41 L. R. A. 548, 57 Am. St. Rep. 327.) The reason, therefore, of the statute applies with full force to every sale of a partial interest in a patent-right as much as to the sale of the entire interest. "That which is within the reason of the law, is a part of the law." (*The State v. Book Co.,* 69 Kan. 1, 15, 76 Pac. 411, 12 L. R. A., n. s., 1041.)

The demurrer should have been overruled. There are allegations in the petition with reference to a contemporaneous oral agreement which add nothing to the cause of action, but they may be regarded as surplusage. The true consideration may always be shown, and from the petition enough appears to show that in this case it was the sale of an interest in a patent-right, which, in our view, amounts to a sale of a patent-right within the purview of the statute.

The contention that the contract was only voidable and not void has been settled in this state in *Mason v. McLeod, supra,* where it was said:

"The purpose of the statute, as we have seen, was to prevent and punish fraud, and non-compliance with its provisions is declared to be a misdemeanor, punishable by fine or imprisonment. The penalty implies a prohibition, and contracts made by a vendor of patent-rights in violation of the act are void." (Page 109.)

In the same opinion it was expressly held that the parties are not *in pari delicto,* for the reason that the law was enacted and the duties imposed for the protection of the purchaser, who violates no law by becoming a party to the contract and is not thereby precluded from asking and obtaining relief. We are satisfied with the reasoning of that case and the conclusions

reached therein.  It follows that, the notes having been given without consideration, the maker may recover from the payee the amount he would be liable to pay to the innocent holders.

The judgment is reversed and the cause remanded, with direction to overrule the demurrer to the petition.