A. C. TREDICK, *Appellant,* v. O. J. WALTERS, *Appellee.*

No. 16,374.

### SYLLABUS BY THE COURT.

1. PATENT RIGHT—*Sale—Registration.* Where a party owning or claiming to have a patent for the manufacture of a certain article contracts to sell to another party and to convey to such other party the exclusive right to sell in a certain territory, for a definite length of time, a mold or molds designed expressly and only to be used in the manufacture of the patented article, he undertakes by necessary implication to convey to such party the exclusive right to manufacture, sell and use the article patented, or claimed to be patented, within such territory during such time, and such contract is illegal and in violation of the laws of this state, unless the steps required by section 4356 of the General Statutes of 1901 have been complied with. Such contract, when executed, constitutes the sale of a patent right or of a right claimed to be patented.

2. PROMISSORY NOTES — *Consideration — "Given for a Patent Right."* The taking of a promissory note in consideration of such contract is illegal unless the words "given for a patent right" (Gen. Stat. 1901, § 4357) be legibly inserted in the body of the note, above the signature of the maker or makers.

3. ——— *Notice of Fraud or Illegality—Presumptions and Burden of Proof.* In the trial of an action brought by a transferee of a promissory note against the maker, the execution of the note being admitted, if the maker prove that the note was tainted in its inception with illegality or fraud the presumptions in favor of the holder's title are overcome, and the burden of proof shifts upon him to show that he or some prior holder took the paper in good faith, for value, without notice, before maturity, and in the usual course of business.

4. ——— *Same.* In this case the execution of the contracts, copies of which are attached to the answer of the maker, being admitted by the holder, such contracts are sufficient evidence to cast upon the holder such burden of proof.

Appeal from Kingman district court; PRESTON B. GILLETT, judge. Opinion filed February 12, 1910. Affirmed.

*Charles C. Calkin,* for the appellant.

*L. F. Walter,* and *George L. Hay,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant brought this action in the district court of Kingman county against the appellee and others, the appellee only being served with summons and the others not appearing, and set forth two causes of action upon two promissory notes, respectively, copies of which were attached to the petition. The allegation of the plaintiff as to the ownership of the notes in each cause of action is the same, and is as follows:

"That said defendant, O. J. Walters, is indebted to this plaintiff by reason of a certain promissory note, in the sum of $108 [$125 in the second cause], dated July 1, 1907 [July 8, 1907, in the second note], bearing eight per cent interest from date until paid, and due on the first day of January, 1908; . . . that said note was made payable to the National Concrete Post Company, and passed by indorsement and was purchased by this plaintiff before maturity, for a valuable consideration, and in good faith, and has remained and is now the property of this plaintiff; that said note was indorsed: 'The National Concrete Post Company, per M. D. Betz, General Manager. M. D. Betz.'"

The appellee answered, first, by a general denial, subject to the admissions in the second defense; second, admitted that M. D. Betz was the agent and authorized to represent the National Concrete Post Company in all respects, and admitted the execution of the notes sued on and the delivery of the same to M. D. Betz, general manager of the post company. The appellee alleged, however, that he and Betz entered into a contract purporting to appoint and authorize the appellee, as an agent of the post company, "to sell the molds referred to in said contract, and to manufacture the reinforced concrete posts referred to in said contract," in Richland township, Kingman county, Kansas. The contract alleged to have been executed at the time of

the giving of the first note and attached to the answer to the appellant's first cause of action reads as follows:

"M. D. Betz, General Manager. W. J. Chamberlain, J. J. McCarthy, General Agents. The National Concrete Post Company, of Abilene, Kan.

"Owners of the patent on the reinforced concrete post, patented March 12, 1901, No. 669,643, and also manufacturer of molds for making same.

"KNOW ALL MEN BY THESE PRESENTS: That the National Concrete Post Company, of Abilene, Kan., has this day authorized, constituted and appointed O. J. Walters, of Basil, Kan., R. F. D. No. 1, their true and lawful agent to sell the molds to manufacture the reinforced concrete fence post in the township of Richland, county of Kingman, and state of Kansas, as long as his sales amount to eight sets of molds a year.

"He has this first day of July, 1907, given his note for $108 to secure the company for payment in full for twelve sets of molds at $6 each; also a payment of $3 each on twelve sets more, leaving a balance of $3 each to pay on the remaining twelve sets of molds at factory when ordered. Molds ordered at any time by local agents. Price to agents $6; retail price, $12.50. Each set of molds to make five posts. The agent will make a report to the company at the end of each month. The company hereby agrees to take notes for payment when same are quoted good by local bank. Ship to Basil, Kan. Signed in duplicate.

M. D. BETZ, *General Manager.*
O. J. WALTERS."

The answer further alleged that the contract set forth was only fictitious, and in fact related to the sale and transfer of a patent right, or what was claimed by M. D. Betz to be a patent right, and was made for the purpose of evading the statutes of the state of Kansas relating to the sale and transfer of a patent right; that neither Betz nor the post company had complied in any way with the law relating to the sale of patent rights, as to filing a copy of letters patent or as to an affidavit of ownership, nor had they inserted in the note, as required by law, the words "given for a patent right"; that the note was without consideration, illegal and

Tredick v. Walters.

void; that the appellant did not purchase the same in due course, in good faith, but, knowing at the time such facts in regard to the transaction, his taking of the same amounted to bad faith; that he knew the note was given for a patent right and in violation of statute, and that the consideration for the note had failed.

The answer to the appellant's second cause of action was substantially the same, and the contract attached, while not identical, was also substantially the same in general purport, differing somewhat in conditions.

The reply was a general denial, not verified.

The case was tried to a jury, and at the inception of the trial the appellant moved the court to order that the burden of proof was upon the appellee. The motion was denied. The appellant excepted, and urges this as a prejudicial error in the case. This contention is not tenable. The contract alleged to have been executed at the time of the execution of each note was attached to the answer as an exhibit. And each contract by its terms identified the note executed at the same time, by reference to it. The execution of the contracts was not denied by a verified reply. The execution of the contracts was, therefore, to be taken as an admitted fact. (Civ. Code, § 108; Gen. Stat. 1901, § 4542.) This admission was not that the appellant knew of these contracts at the time he purchased the notes, but it stood in lieu of proof of the contracts at the time of the trial. We think that the contracts afforded sufficient evidence of illegality to shift the burden of proof, which usually rests upon a defendant to prove the plaintiff's knowledge of the illegality at the time of purchasing a note, and to place the burden upon the appellant to prove that he bought the notes before maturity, in due course of business, for value, and without any notice of the illegality of the consideration between the maker and the original payee, his grantor. It is said in volume 4 of the American and English Encyclopædia of Law, at page 321:

"When it has been shown that a negotiable instru-

ment was stolen from or lost by the true owner, tainted in its inception with illegality or fraud, obtained from the maker by fraud or duress, or put into circulation fraudulently, the presumptions in favor of the holder's title are overcome, and it devolves upon him to show that he is a *bona fide* holder for value; that is, he must show that he or some prior holder took the paper in good faith, for value, without notice, before maturity, and in the usual course of business."

(See, also, the notes and numerous decisions there cited. See, also, note 4 in 17 L. R. A. 328.)

The contracts executed simultaneously with the notes are in themselves sufficient to raise a strong inference of the illegality of the transaction, and throw the burden of proof upon the appellant.

After this ruling the appellant himself took the witness stand, and in the course of his examination admitted that before the execution of the notes and contracts he had accused Betz, the general manager of the post company, who made the contracts with, and received the notes from, the appellee, of selling "blue sky." This was sufficient to justify the submission to the jury of the question as to the knowledge of the appellant of facts which would impeach his good faith in taking the notes.

It is, however, contended by the appellant that both instructions 7 and 8 are based upon an erroneous construction of the statute. These instructions read:

"(7) You are further instructed that a note or notes given in violation or in contravention of the above law is absolutely void as between the maker of the note and the payee thereof, and as between all other holders of the note or notes having knowledge that it was given for a patent right in violation of the statute, or having knowledge of such facts as that their action in taking the note, or notes, amounted to bad faith.

"So, in this case, if you find from the evidence that M. D. Betz, as the agent for the National Concrete Post Company, took the notes sued on herein from the defendant in this case, O. J. Walters, and that the consideration for which said notes were given was, in

whole or in part, the right to sell or to manufacture a patented article, or what was claimed by the said M. D. Betz to be a patent right, and that the said M. D. Betz transferred said notes to the plaintiff in this case, A. C. Tredick, before maturity and for a valuable consideration, and that the said A. C. Tredick knew, at the time he purchased said notes, that the consideration for said notes, in whole or in part, was a patent right, or the right to sell or manufacture a patented article, or that said A. C. Tredick had knowledge of such facts with reference to the consideration that his taking of the notes amounted to bad faith, then and in that event the plaintiff can not recover from the said defendant, O. J. Walters, in this case, and your verdict should be for the defendant.

"(8) You are further instructed that the sale of a right to use, and manufacture for sale and use, for any specified time, in any specified territory, a patented article, or what is claimed to be a patented article, is a sale of such interest in the patent right as brings the transaction within the provisions of the statute relating to the registration and sale of patent rights, as above set forth, and requires all notes given for such consideration to be indorsed, as I have before said to you, 'given for a patent right.'"

It is conceded that these instructions are in accord with the decisions of this court in *Nyhart v. Kubach,* 76 Kan. 154, and *The State v. Morey,* ante, p. 149, which hold in substance that the sale of the exclusive right to sell a patented article in a certain territory for a definite length of time, within the life of the patent, is a sale of an interest in the patent right. But it is said that these decisions were made on the authority principally of *New v. Walker,* 108 Ind. 365, and that the supreme court of Indiana in a later decision, *Hankey v. Downey,* 116 Ind. 118, practically reversed the decision in *New v. Walker,* and held that the statute of Indiana (Rev. Stat. Ind., 1881, §§ 6054, 6056), which is essentially the same as ours (Gen. Stat. 1901, §§ 4356, 4358), does not render a contract for the exclusive sale of the finished product, the patented article,

53—81 KAN.

in a certain territory for a definite length of time, illegal; that a party owning a patent and manufacturing a patented article thereunder has a right to make any contract with an agent or party giving the exclusive right to sell the finished product substantially in any manner the parties may agree upon; that the condemnation of the statute is against the selling of the intangible thing, the patented right, or a pretended patented right, or any interest therein.

However this may be, it is not necessary for us to consider the question in this case. The written contract itself does not contain, nor is there any evidence that Betz in making the contract with the appellee made, any representation that the molds which by the terms of the contract he undertook to sell to the appellee were patented. One of the written contracts purports to be between the National Concrete Post Company, by M. D. Betz, its general manager, and the appellee, Walters, and the post company is described in the heading of the contract as "owners of the patent on the reinforced concrete post, patented March 12, 1901, No. 669,643, and also manufacturer of molds for making same." The appellee, in his testimony in regard to the representation as to the patent, testified as follows:

"Ques. Mr. Walters, I will ask you what, if anything, Mr. Betz said with reference to his patent? Ans. He said he had a patent—he said he had a patent on the use of the cable wire that was used to reinforce the posts."

These were the only representations in regard to a patent. It goes without saying that one who has an article designed for a particular use, who has the right to use the article for the purpose for which it is designed, and who sells such article to another, by necessary implication sells also the right to use the article for such purpose. The molds described in the contract were designed expressly for the manufacture of the posts claimed to have been patented, and the sale of such

molds, by the terms of the contract, necessarily carried with it the exclusive right to manufacture, sell and use the posts claimed to be patented, within the designated territory for the time specified. The right to manufacture, sell and use a patented article is the very essence of the intangible thing called a patent, and brings this case squarely within the reasoning of *Hankey v. Downey*, 116 Ind. 118.

It is true instruction No. 7 includes "the right to sell or to manufacture a patented article." The contract in this case, however, can not be construed as conveying any right to sell any article made by the post company for the manufacture of which the post company claimed to have a patent. But the contract in this case was for the sale of molds which were designed for the express and only purpose of being used in manufacturing a post that was claimed to be patented. And, as before said, such contract by necessary implication conveyed with the molds the right to manufacture the posts, to use them, and to sell them.

Therefore, even if it should be conceded for the sake of the argument that *Nyhart v. Kubach*, 76 Kan. 154, is wrong in principle, and that *Hankey v. Downey*, 116 Ind. 118, is right in principle, it does not require the reversal of this case. Instructions 7 and 8 were proper instructions. The case was submitted to the jury upon proper instructions, the jury decided the facts in issue against the appellant and their verdict was approved by the court, and the judgment rendered thereon is affirmed.