W. F. BOLTE, *Appellee*, v. J. H. SPARKS *et al.*,
*Appellants.*

No. 16,849.

SYLLABUS BY THE COURT.

1. PATENT RIGHT—*Sale—Notes "Given for a Patent Right"—
Validity.* The owner of a patent right who by written con-
tract vests in an agent the exclusive right and authority to
sell territory to customers who are to have the exclusive
right to sell the patented invention in such territory, thereby
parts with an interest in the patent; and notes taken in con-
sideration for such agency contract must contain the words
"given for a patent right" in order to be valid.

2. PROMISSORY NOTES—*Illegality—"Given for a Patent Right."
—Erasure—Validity of Notes.* A sold to B an interest in a
patent right, taking therefor four notes containing the words
"given for a patent right." Soon thereafter C sold to A
another interest in the same patent right in consideration for
these notes, knowing that they had been given in part pay-
ment for an interest in a patent right. C, in order to obtain
paper freed from the quoted words (A consenting), procured
B to take back the notes and give in their place others which
omitted the words referred to. *Held*, that this transaction
was equivalent to an erasure from the old notes of the quoted
words, and the new notes are void for failure to contain them.

Appeal from Sedgwick district court. Opinion filed
June 10, 1911. Reversed.

*Henry C. Sluss*, for the appellants.

*S. B. Amidon, David M. Dale*, and *Jean Madalene*,
for the appellee.

The opinion of the court was delivered by

WEST, J.: The Reversible Self-sharpening Plowshare
Company, owning a patent on the invention indicated,
sold Sparks an agency for the sale of territory. Sparks
was to sell the exclusive right to vend the patented
article in certain counties in Oklahoma and Indian Ter-
ritory, his vendees to purchase the plowshares of the

company at a sum not exceeding three dollars each. He was to have eighty dollars for each county sold and was to sell twenty counties within one year. It was expressly stated in the contract of agency that it was not intended to vest Sparks or any customer of his with any interest in the patent, but only to authorize the exclusive right to sell the invention. As part consideration for the agency Sparks executed to Stewart, a member of the company, four notes for $500 each, due in six, twelve, eighteen and twenty-four months, respectively, each having printed on its face the words "given for a patent right." Bolte, another member of the company, sold his interest to Stewart, receiving therefor the Sparks notes, and finding a chance to trade for certain real estate, the owner of which did not desire notes which showed that they were given for a patent right, induced Sparks to take back the four notes and give him in lieu thereof the four ordinary notes sued on. The defense was that the new notes were in reality given for an interest in a patent right and were void for failure so to state. A jury being waived, the court found for the plaintiff and entered judgment upon the notes. The defendants appeal.

It is urged that the new notes, being taken in place of the old ones and really for the same consideration, are void under the act relating to patent rights. (Laws 1889, ch. 182, §§ 1-3, Gen. Stat. 1909, §§ 5515-5517.) On the other hand, it is insisted that no interest in the patent passed by the contract with Sparks, but that a mere agency was thereby created, and, further, that the surrender of the old notes was the consideration for the new ones, and therefore they are valid.

Section 5515 of the General Statutes of 1909 makes it unlawful for any person to sell or offer to sell or barter any patent right or any right which such person shall allege to be a patent right without filing with the clerk of the district court copies of the letters patent duly authenticated. Section 5516 requires any person

taking any obligation in writing "for which any patent right or right claimed by him or her to be a patent right, shall form a whole or any part of the consideration," to insert the words "given for a patent right." Violation of these provisions is by section 5517 made a misdemeanor. The parties to the original notes recognized the applicability of the statutes by inserting the required words. While the contract contains the provisions that "it is not intended hereby to vest in the party of the second part, or for the party of the second part to be authorized to vest in any other person, firm or corporation any interest in the patent hereinbefore referred to, but only to authorize and empower the party of the second part, as the agent of the parties of the first part, to sell unto other persons, firms and corporations the exclusive right in one or more of the counties in the territory hereinbefore mentioned to sell to dealers or consumers" still, other portions vest in the agent the exclusive right and authority to sell territory for the patented invention which is to be manufactured by the company and sold by it at a sum not to exceed three dollars for each plowshare. The instrument in fact vests the exclusive right to sell territory at so much a county, the purchaser to have the exclusive right to sell the plowshares in a given county after they have been purchased of the company. In *Pinney v. Bank,* 68 Kan. 223, it was held that a sale of the exclusive right to manufacture, use and sell a patented invention in a given territory carries with it an interest in the patent right itself. In *Nyhart v. Kubach,* 76 Kan. 154, it was held that a sale of the exclusive right to sell the patented article within a certain territory is a sale of an interest in the patent right. It was there said:

"It is universally recognized, however, that a sale of the rights conferred by the letters patent within a certain territory is a sale of a patent right." (p. 157.)

In *Tredick v. Walters*, 81 Kan. 828, a similar ruling was made with reference to the sale of the exclusive right to sell for a certain time in a definite territory a mold or molds designed expressly and only to be used for the manufacture of the patented article. At page 835 it was said:

"The right to manufacture, sell and use a patented article is the very essence of the intangible thing called a patent."

The reason for this ruling is that letters patent are evidence that the government, for the purpose of encouraging inventions, has for a time certain granted to the inventor a monopoly. (30 Cyc. 815-817.) This monopoly consists of the exclusive right to manufacture, use and sell the patented invention, and whenever the patentee parts with any portion of this monopoly he necessarily disposes of an interest in his patent. The right to sell is as exclusive as the right to manufacture, and after vesting Sparks and his customers with the exclusive right to sell the plowshare in a given county the holder of the patent no longer had a complete monopoly of the manufacture and sale of the invention; and, of course, the company could not vest this interest in the patent—the monopoly—and at the same time retain it. The quoted words of the contract concerning the intention indicate a fruitless attempt to avoid or evade the statute, although strangely enough, the very notes taken contained the required words. Sparks was not employed as an agent to sell the plowshares; he was given an exclusive agency to sell to others the exclusive right to sell them in certain territories.

It is argued that since we first adopted and followed the construction given by the supreme court of Indiana to a statute similar in terms, a different view has been taken by that court, as shown in *Hankey v. Downey*, 116 Ind. 118. But this decision marks no departure from former decisions; it simply holds that a note

given for the mere purchase of a patented article need not contain the words "given for a patent right," the court reaffirming its former expressions that when given for an interest in the patent right the note must contain these words. Had Sparks purchased a plowshare of the company or of some agent or customer authorized to sell, and given his note therefor, it would not have been necessary to include these words, for there is a manifest distinction between the manufactured article itself and a monopoly of the right to manufacture, use or sell it. The evident purpose of the statute is to protect those who are asked to accept notes given for patents by having such notes carry with them the evidence of this fact, but it is as clearly not the intention to burden in this way each sale of a patented article, if, indeed, the legislature could do so.

The proposition that the surrender of the old notes, and not an interest in the patent right, formed the consideration for the new notes is too tenuous and transparent to warrant extended consideration. Bolte sold an interest in the patent and received therefor the notes which had been given for another interest in the same patent; then instead of inducing Sparks to erase the significant words from the old notes he procured him to exchange for them the new notes freed from such words, so that the owner of the desired real estate would accept them. The surrender of the old notes was not the consideration, but was simply one item in the program of mutual courtesy by which Stewart, Sparks and Bolte were attempting to supersede paper scarred by a statutory birthmark with notes possessing a fair skin. Bolte acted with full knowledge, and if this plan could succeed then the only thing necessary to render the statute futile would be for the seller of a patent right to exchange the lawful note received for one unmarked by the required statutory verbiage. The law can not be thus trifled with. Counsel say in their brief: "Appellee had no knowledge of the

2—85 KAN.

contract of Stewart and appellant." But the appellee, Bolte, testified, as shown by the abstract, that he wrote the notes sued on, that he was a member of the company, that he sold his interest to Stewart and took from him the notes given by Sparks, and that when he obtained the Sparks notes from Stewart he knew that Sparks had given them as part payment for an interest in the patent right. The case of *Russell v. Gregg,* 49 Kan. 89, is cited, but that was a case of alleged failure of consideration, followed by a compromise, and the giving of a new note for a much smaller amount—in effect a case of accord and satisfaction, no question under the patent statute being raised or in anywise involved.

The judgment is reversed and the cause is remanded with directions to enter judgment in favor of the defendants.