No. 23,882.

G. R. Schmoyer, *Appellant*, v. E. N. Van Hosen et al., *Appellees*.

SYLLABUS BY THE COURT.

1. Sale of Patent Right—*Contract in Violation of Provisions of Statute.*
A contract by which one party undertakes to sell to the other the exclu-
sive right for five years to sell within a specified territory an article a
patent for which had been applied for but not issued is one for the sale
of a patent right within the meaning of the statute regulating such sales.

2. Same—*Patent Not Yet Issued—Statute Applicable.* Such a contract is
invalid within the provisions of the statute forbidding the sale of a patent
right unless a copy of the patent has been filed with the clerk of the dis-
trict court, notwithstanding the impossibility of meeting that requirement.

3. Same—*Requirement of Statute Not Confined to Negotiable Paper.* The
statutory requirement that any obligation in writing for which a patent
right forms the consideration must contain the words, "Given for a patent
right," while intended primarily to prevent negotiable instruments given
for patent rights from passing into the hands of innocent holders, is not
confined in its operation to negotiable paper. And it is held that the omis-
sion of such words in the contract here involved constituted a violation of
the statute.

4. Same—*Assignment of Certificate of Deposit—Within the Operation of the
Statute.* The assignment in payment for a patent right of a part of a cer-
tificate of deposit is within the operation of the statute requiring any ob-
ligation in writing for which a patent right forms the consideration to have
inserted therein the words "Given for a patent right."

5. Same—*Contract Not Within Operation of Blue-sky Law.* A written con-
tract undertaking to sell a patent right is not within the operation of that
part of the blue-sky law requiring a permit from the bank commissioner for
the sale of speculative securities, "securities" being defined as "stock cer-
tificates, shares, bonds, debentures, certificates of participation, contracts,
contracts or bonds for the sale and conveyance of land on deferred pay-
ments or installment plan, or other instruments in the nature thereof by
whatsoever name known and called."

Appeal from Morton district court; Charles E. Vance, judge. Opinion
filed July 8, 1922. Reversed.

*G. W. Sawyer,* and *John C. King,* both of Liberal, for the appellant.

*A. C. Malloy, R. C. Davis, Warren H. White,* all of Hutchinson, and *Ar-
thur L. Maltby,* of Elkhart, for the appellees.

The opinion of the court was delivered by

Mason, J.: E. N. Van Hosen and G. R. Schmoyer entered into
a written contract by the terms of which the former undertook to
sell to the latter for a consideration of $2,000 the exclusive right for

five years to sell "Dream Electrolyte" (a new solution for storage batteries) within a designated territory. Schmoyer brings this action against Van Hosen (joining a corporation alleged to have an interest in the matter) seeking the cancellation of the contract on the ground that it was entered into in violation of the statute regulating the sale of patent rights and of the blue-sky law. A demurrer to the petition was sustained and the plaintiff appeals.

The contract bears the title "Sub-license to sell Dream Electrolyte" and the portion of it which is here material reads as follows:

"Whereas, by indenture dated December 17th, 1920, Lester Ray Kirkhart, who made application for Letters Patent in the office of the United States Patent Office under application number 425169, executed and delivered for valuable consideration, an exclusive contract of his right to manufacture and sell the Dream Electrolyte to E. N. Van Hosen, his heirs, executors, administrators or assigns, of Elkhart, Kansas; therefore,

"In consideration of the sum of Two Thousand Dollars ($2,000.00) to me in hand paid, receipt whereof is hereby acknowledged before the signing of these presents, I, E. N. Van Hosen, do hereby sell, assign, transfer and convey unto G. R. Schmoyer the exclusive right and license to sell Dream Electrolyte in County of Oklahoma, State of Oklahoma, from the 13th day of January, 1921, to the 13th day of January, 1926, upon the strict condition however, that Said G. R. Schmoyer shall have no right to manufacture said Dream Electrolyte but . . . shall purchase the same exclusively from me, my heirs, executors, administrators or assigns, and upon the further condition that said G. R. Schmoyer shall exploit and sell only Dream Electrolyte to the exclusion of all other similar products throughout said Oklahoma County, of Oklahoma.

"It is mutually understood and agreed by and between the parties hereto that said E. N. Van Hosen shall establish a uniform wholesale price at which said Dream Electrolyte shall be sold and the purchaser hereof shall be entitled to purchase said Dream Electrolyte from said E. N. Van Hosen, his heirs, executors, administrators or assigns at such uniform wholesale price so fixed as aforesaid.

"In consideration of the above sale and conveyance to me, I, G. R. Schmoyer of the County of Oklahoma, State of Oklahoma, do hereby covenant and agree to and with said E. N. Van Hosen, his heirs, executors, administrators or assigns, that I will faithfully and to the best of my ability exploit and sell the Dream Electrolyte to the public at a retail price fixed and designated by said E. N. Van Hosen, his heirs, executors, administrators, or assigns and that I will advertise and sell the same at a price which will be neither less nor more than the price so fixed and designated as aforesaid.

"It is mutually understood and agreed by and between the parties hereto that in case of default on the part of G. R. Schmoyer to punctually pay to said E. N. Van Hosen, his heirs, executors, administrators or assigns, the purchase price of all of said Dream Electrolyte ordered by G. R. Schmoyer and delivered by said Van Hosen as aforesaid as the same shall become due

and payable this conveyance and all rights hereunder sold and assigned to said G. R. Schmoyer shall be forfeited. . . .

"It is further mutually covenanted and agreed that all rights herein conveyed to said G. R. Schmoyer are not assignable . . ."

The plaintiff contends that the transaction amounted to a sale by the defendant of a patent right, and of a right which the defendant alleged to be a patent right, and that because no copy of the letters patent or any affidavit concerning them was on file with the clerk of the district court, and because the contract did not contain the words "Given for a patent right," the defendant in entering into it violated the following sections of the statute:

"It shall be unlawful for any person to sell or barter or offer to sell or barter any patent right, or any right which such person shall allege to be a patent right, in any county within this state, without first filing with the clerk of the district court of such county copies of the letters patent duly authenticated, and at the same time swearing or affirming to an affidavit before such clerk that such letters patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter the right so patented; which affidavit shall also set forth his name, age, occupation and residence; and if an agent, the name, occupation and residence of his principal. A copy of this affidavit shall be filed in the office of said clerk, and said clerk shall give a copy of said affidavit to the applicant, who shall exhibit the same to any person on demand." (Gen. Stat. 1915, § 6794.)

"Any person who may take any obligation in writing for which any patent right, or right claimed by him or her to be a patent right, shall form a whole or any part of the consideration, shall, before it is signed by the maker or makers, insert in the body of said written obligation, above the signature of said maker or makers, in legible writing or print, the words, "Given for a patent right." (Gen. Stat. 1915, § 6795.)

The defendant asserts that the contract did not involve the sale of a patent right or what he alleged to be a patent right, but was a mere agency agreement; that inasmuch as no letters patent had been issued it would have been impossible for him to have had on file any copy of them or to have made such an affidavit as that described in the statute; and that the contract is not the kind of "written obligation" to which the requirement as to the use of the words "Given for a patent right" applies.

1. A contract made in violation of the statute quoted is void. (*Mason v. McLeod*, 57 Kan. 105, 45 Pac. 76.) Whatever features of agency the contract here involved may have, it does in set terms "sell, assign, transfer and convey" to the plaintiff the exclusive right for five years to sell "Dream Electrolyte" in Oklahoma county. This cannot fairly be interpreted as meaning merely that the de-

fendant would refuse to supply the article to other dealers in that territory—that he would make the plaintiff his exclusive agent therein. The reference to the patent serves to interpret the phrase "exclusive right" if it needs any interpretation. The granting of an exclusive right to sell a patented article in a specified territory is a sale of a patent right. (*Nyhart v. Kubach*, 76 Kan. 154, 90 Pac. 796.) We regard the contract as providing for the sale of a patent right, as well as of what was alleged to be a patent right. The inventor of an article which has not been patented may of course bargain with respect to his rights thereto, and transfer them in whole or in part to others. But that is not the character of the agreement under consideration. In it the defendant, after the recital that Kirkhart, who had applied for letters patent, had given him "an exclusive contract of his right to manufacture and sell the Dream Electrolyte," undertakes to grant to the plaintiff "the exclusive right and license" for five years to sell it in the county named. The exclusive right to sell could exist only in virtue of a patent and in assuming to confer an exclusive right of sale the defendant assumed the subsequent issuance of a patent, and professed to sell a right under that patent. The contract clearly means that when the letters patent were issued the plaintiff was to enjoy their protection—that during the period named he should possess within Oklahoma county the privilege of the exclusive sale of Dream Electrolyte conferred by the patent. Therefore the contract was one by which the plaintiff undertook to sell not only what he held out to be and in effect alleged to be a patent right, but what would actually be a patent right whenever the patent should be granted. "It concerned a patent right, existing or non-existing. The fact that letters patent had not been issued did not change the subject-matter of the contract. That remained a patent right." (*Hager v. Hale*, 110 Kan. 507, 508, 204 Pac. 529.)

2. We regard the contract as within the letter and spirit of section 6794. Inasmuch as the requirements of that section cannot be met until a patent has been issued it follows from this interpretation that until that has been done a prospective patentee cannot lawfully sell rights which can be brought into existence only by its issuance. As already suggested this does not mean or imply that he may not bargain concerning his rights as an inventor or even his prospective rights under a patent to be issued, but that is a different thing from undertaking to sell a nonexistent right—to give to another a privi-

lege of exclusive sale which he does not possess. To interpret the statute as allowing sales of "territory"—of exclusive selling rights within stated boundaries—where no patent had been issued would be to permit the very character of dealing it was intended to restrain. Under such an interpretation nonexistent "patent rights" might be sold under that name, the seller evading the effect of the statute by showing it was impossible to comply with its provisions.

3. There is no doubt that the primary purpose of section 6795 is to prevent a negotiable instrument given for a patent right from passing into the hands of a holder in due course. The statute is not in so many words, however, limited in its application to negotiable obligations. The legislature may well be regarded as intending to prevent third persons from becoming involved in a possible controversy over a patent-right sale without knowing its nature, apart from any question of defenses being cut off upon grounds peculiar to commercial paper. The fact that the contract here involved shows upon its face its character and consideration does not do away with the possible benefit to be derived from an explicit statement that it was given for a patent right. The defendant asserts that a patent right, or right claimed to be a patent right does not form the consideration, or any part of the consideration, of the contract. The court thinks otherwise. The matter being debatable it cannot be said that no purpose could be served by requiring in such a case a statement of the fact in words that could not be misunderstood.

4. The petition also alleged that $1,700 of the $2,000 payment referred to in the contract was made by the plaintiff's indorsing and assigning to the defendant that much of a certificate of deposit for $3,000 issued by a North Dakota bank, the certificate being placed with a Kansas bank which holds it for the benefit of the defendant to the extent of the $1,700. The return of the certificate as well as of the cash payment of $300 is asked. We regard the assignment of an interest in the certificate as a written obligation within the meaning of the statute relating to the use of the words "Given for a patent right."

5. The blue-sky law forbids the sale by public offering of "speculative securities" without a permit therefor having been obtained from the bank commissioner. (Laws 1919, ch. 153, §§ 2, 3.) "Securities" is defined to mean "stock certificates, shares, bonds, debentures, certificates of participation, contracts, contracts or bonds

for the sale and conveyance of land on deferred payments or installment plan, or other instruments in the nature thereof by whatsoever name known and called." (§ 1.) The plaintiff contends that the writing in question is a contract within the meaning of that word as used in the part of the statute quoted and that the transaction described in the petition amounts to a sale of such a contract. Without attempting to define the scope of the word "contracts" as there employed we hold that the entering into the agreement here under consideration was not a sale of a contract within the operation of the statute. What was sold was the exclusive right to sell "Dream Electrolyte" in Oklahoma county—a patent right. The subject of regulating the sale of patent rights has engaged the attention of the legislature, and patents are referred to in the first section of the blue-sky law of 1919, where securities of an enterprise a material part of the assets of which consists of patents are classified as speculative. If the purpose had been to require a permit for the sale of patent rights of a speculative character we think it would have been indicated expressly or by clearer implication than we find in the present statute.

The judgment is reversed and the cause is remanded with directions to overrule the demurrer to the petition.