No. 28,588.

W. V. FITZPATRICK and W. MARCUS BARBEE, *Appellants*, v. C. E. BEAN et al., *Appellees*.

(278 Pac. 46.)

Opinion filed June 8, 1929.

*Thomas F. McGlynn, P. W. Croker* and *Joseph Taggart*, all of Kansas City, for the appellants.

*James F. Getty*, of Kansas City, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover money paid in connection with sale by defendant to plaintiffs of a patent right. A demurrer to plaintiffs' evidence was sustained, and they appeal.

On August 11, 1925, defendant was granted a patent for a new and useful invention in steam washers, the grant being of exclusive right to make, use and vend the invention throughout the United States and its territories for the term of seventeen years. Defendant did business as the "Paramount Steam Washer Co." The address of the company was 721 Minnesota avenue, Kansas City, Kan.

Plaintiffs met defendant in Chanute, and a contract was executed

without observance by defendant of the requirements of R. S. 57-101 to 57-103, relating to sale of patent rights. The contract appointed plaintiffs sole and exclusive dealers to sell the Paramount steam washer in Miami county for the term of one year. Defendant agreed promptly to fill orders from appointed dealers, and guaranteed each Paramount steam washer to be like the sample furnished. Plaintiffs paid defendant $1,216.05. Plaintiffs received from defendant books containing 363 Paramount steam washer drafts, each one for $3.35, to be used when ordering Paramount steam washers. An order would be filled when accompanied by one of the drafts and $14.12 in cash. Plaintiffs agreed not to sell or offer for sale the Paramount steam washer for less than the established price of $35. Plaintiffs were granted further privilege of ordering from defendant's factory and selling 363 more Paramount steam washers, under the same terms and conditions and within the same time and territorial limits. The contract contained provisions not material here for appointment by plaintiffs of local dealers. Plaintiffs received of defendant six sample machines, and six washing machines for which they paid.

Plaintiffs produced at the trial a piece of metal which Fitzpatrick testified was a handle for use on one of the Paramount steam washers. The handle was marked as follows:

"PARAMOUNT STEAM WASHER COMPANY
Kansas City, Kansas.
Pat. Aug. 11, 1925."

Defendant says there was no evidence establishing connection between the patent-marked piece of metal and the washers mentioned in the contract.

The subject of the contract was an article called by defendant "Paramount steam washer." Plainly, the steam washer was given the name "Paramount steam washer" to identify it and to distinguish it from other articles of manufacture and sale, whether by defendant or by others. Concordance of name was some evidence of identity of thing. At least plaintiffs were not required to negative existence of other kinds of Paramount steam washers, and *prima facie*, when Fitzpatrick said the handle bearing the patent mark was for use on one of "the Paramount steam washers," he referred to the steam washers which were the subject of his dealings with defendant.

Defendant says there was no evidence establishing connectión between the washer described in the patent and the patent-marked Paramount steam washer handle. Patented articles must be marked as such, unpatented articles may not be marked as patented, and the mark must appear somewhere on the article, if possible. (U. S. Rev. St., §§ 4900, 4901.) The Paramount steam washer bore on its handle the patent mark, "Pat. Aug. 11, 1925." The legend above the patent mark, "Paramount Steam Washer Company, Kansas City, Kansas," indicated who was using the mark. By affixing the mark, defendant asserted it was affixed under a patent of that date. That date is the date of a patent issued to defendant for an improvement in steam washers, and plaintiffs were not obliged to negative existence of some other patent to defendant of the same date pursuant to which defendant was using the patent mark.

Defendant says the contract was merely one for the appointment of an exclusive agent, and was not a contract of sale of a patent right.

The patent did not grant to defendant right to make, use and vend his invention. Assuming the invention was new and useful, defendant could make, use and vend it at pleasure without making application for a patent. In the days when we had such things, his right to make, use and vend was a "natural right." What the patent secured to defendant was power to exclude everybody else in the United States and its territories from making, using and vending the invention for a period of seventeen years. Defendant was privileged to remove the disability of others to make, use and vend to such extent and on such terms as defendant might choose. In this instance defendant consented to create an interest in his "patent right" in plaintiffs. They were appointed dealers only. They could not make or use. When they ordered a washer they paid for it. When they received a washer, it was theirs to sell. When they sold it, they sold it as their own and kept the money. In thus performing the dealer's function of buying from defendant and selling to others, plaintiffs acted for themselves and not for defendant. The distinguishing mark of the agency relation, acting for and on behalf of a principal and under his direction, was absent, and the appointment contained the words which are characteristic of a sale of a patent right: "We hereby appoint [plaintiffs] our sole and exclusive dealer to sell the Paramount steam washer in the

·county of Miami, state of Kansas, for the term beginning August 15, 1926, and extending for one year." (*Nyhart v. Kubach,* 76 Kan. 154, 90 Pac. 796; *Schmoyer v. Van Hosen,* 111 Kan. 759, 208 Pac. .554.)

The contract was an integration of several writings. Part of the ·consideration to plaintiffs was the draft books, and part was sale of .a patent right. Defendant says plaintiffs should not recover be- ·cause they did not return or offer to return the draft books. It was not necessary that plaintiffs should do so. There are no equities in this kind of a case. Defendant has $1,216.05 of plaintiffs' money which he obtained illegally. Because the transaction by which defendant obtained the money was illegal, plaintiffs may recover. ·They are not regarded as *in pari delicto* with defendant, and the law leaves defendant where it finds him. (*Mason v. McLeod,* 57 Kan. 105, 45 Pac. 76.)

The judgment of the district court is reversed, and the cause is remanded for a new trial.