No. 28,732.

The Fidelity State Bank, *Appellant*, v. Fred J. Evans, *Appellee*.

(282 Pac. 591.)

Opinion filed December 7, 1929.

*C. L. Marmon*, of Garden City, for the appellant.
*Ray H. Calihan*, of Garden City, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: In this action the appeal is taken by the plaintiff bank from a judgment rendered against it in favor of the defendant on two promissory notes. The judgment was rendered on the first cause of action on motion of the defendant for judgment on the pleadings, and a trial was had on the second cause of action before the court which found in favor of the defendant. Appellee challenges the right of appellant to be heard upon its appeal and moves to dismiss the appeal because the notice of appeal is irregular and does not follow the statute, and because the abstract is not formally certified by the attorney for appellant. The latter is a matter that has sometimes been permitted to be done later than intended by the rules, and since our attention is only called to this omission at the time of the hearing and the abstract is recognized by appellee for the purpose of review, the certification will be considered as having been made later. The language of the notice of appeal was not in exact conformity with the legal requirement of

R. S. 60-3306, but with the liberal construction placed on that requirement in *Shaffer v. Harbaugh,* 105 Kan. 681, 185 Pac. 1049, it would seem to be sufficient.

The petition contained the usual allegations as to these two notes, which were both in the usual form, payable directly to the bank and were past due. The answer as to the one set out in the first cause of action admitted the execution of the note, but alleged that it was given for the purchase of five shares of the capital stock of the plaintiff bank when it was being organized, and since the note did not bear on its face the indorsement in writing that it was for such shares as required by R. S. 17-1219 it was void. The reply admitted that the note was given for the purchase of stock in the plaintiff bank and asserted that the stock had not since been sold or transferred, but was the property of the defendant.

Under this state of the pleadings the defendant was entitled to judgment thereon. The statute requiring such information to be placed in the face of the note before it is signed is imperative. The law was enacted in 1923, and has been upheld as to the non-negotiable character of notes containing the required insertion in the case of *Hayter v. Dinsmore,* 125 Kan. 749, 265 Pac. 1112, and our negotiable-instrument law, R. S. 52-206, recognizes the validity of such a requirement and provides that the negotiable-instrument act shall not in any way alter or repeal the requirement to state the nature of the consideration in the face of the instrument. This enactment followed the form of a similar statute with reference to the purchase of patent rights, R. S. 57-102, which has been in force in this state since 1889, and has been frequently construed by this court to the effect that the note is illegal and void.

"A promissory note given in consideration of a patent right or any interest therein is illegal unless the words 'given for a patent right' be legibly inserted in the body of the note above the signature of the maker." (*Grimm v. Kubach,* 88 Kan. 649, syl., 129 Pac. 943. See, also, *Hager v. Hale,* 117 Kan. 98, 230 Pac. 327; *Nyhart v. Kubach,* 76 Kan. 154, 90 Pac. 796; *Yuncker v. English,* 121 Kan. 425, 247 Pac. 637.)

There was no error in sustaining the motion of the defendant for judgment for the defendant upon the pleadings as to the first cause of action.

The answer to the second cause of action was that the note for $250 was given by the defendant to the Peoples State Bank as an accommodation to William Wonn, an officer thereof, who was also

interested in the reorganization of said bank as the plaintiff bank; that about the time of the reorganization the defendant signed this note in favor of the plaintiff bank as a renewal and took up the old note, paying the interest thereon in the sum of about $10, and William Wonn at that time gave defendant his note for $260, to become due at the same time this note became due; that defendant indorsed the Wonn note and turned it over to plaintiff bank as collateral security for the note of the defendant. That William Wonn at that time was financially responsible and plaintiff bank could have collected the same from him when the note became due, but he has since died, and in the meantime the plaintiff has surrendered said collateral security to William Wonn in some settlement or adjustment of other business transactions. To this the plaintiff replied by way of general denial.

After hearing the evidence, the court found for the defendant and rendered judgment for him for costs. There is evidence sufficient to support such finding in favor of the defendant, as far as the facts go, but there is a question of law involved that may require a reversal of this ruling, and that is the legal right of the holder of collateral security to dispose of such security to the best advantage possible, and if this is done in good faith and without neglect or loss of reasonable opportunity, the bank is only liable for the proceeds derived from such security. The fact that the collateral security note was for approximately the same amount as the defendant's note will not justify the setting of the security opposite the defendant's note as complete payment of it, or discharge the defendant from liability on his note. If the security had been for an amount very much larger, there might have been a balance due the defendant from the plaintiff after disposing of the collateral; if much smaller, the defendant would have owed the difference. Regardless of its face value, it might have been of no real value. Neither does the duty rest wholly upon the bank to collect on the collateral security. It may have been abundantly satisfied with the name and responsibility of the defendant without any collateral, but it does owe a duty to account to the defendant for the collateral furnished, either by the return thereof or by giving credit on the note for the proceeds obtained therefrom by reasonable diligence and in good faith. The theory of the appellant that the matter of security is of no consequence and can be disregarded, cannot be sustained; neither on the other hand will it be proper to regard the

collateral note of the same face value as a complete set-off, regardless of the disposition made of it, and permit it to exonerate and discharge the defendant of every obligation on his note. The duty of a bank holding a note as collateral security is very much the same as if it held a chattel mortgage to secure the note. If the proceeds derived from the chattels do not pay the note, the bank can collect the balance. And so in this case, while the defendant is entitled to either the return of the collateral or an accounting for the proceeds derived therefrom in good faith, yet he is liable on the note for any balance not collected from the security furnished.

"A payee who holds collateral security for the debt evidenced by a note is entitled to judgment for the full amount of the note against the indorser, notwithstanding his collateral security. The payee need not sell the collateral before suing on the note. If collateral has been sold, the price paid must be deducted, unless the sale has been set aside." (8 C. J. 1092.)

"It is the duty of the pledgee of commercial paper holding the same as collateral security to collect it as it becomes due and apply the net proceeds to the payment of the debt secured, and he has the right to pursue this course, although he has been expressly given the power to sell the same. The collaterals may, upon their maturity, be collected even before the principal debt is due, in which case the pledgee will hold the proceeds in lieu of the original security. But payment of the secured debt by the pledgor to the pledgee operates as a discharge of the pledged securities, and if they have already been collected by the pledgee, he is liable to the pledgor for the proceeds; but if he has not collected them he is no longer under any obligation to do so, and must hold them for redelivery to the pledgor upon demand." (31 Cyc. 829.)

"A sale of property under a chattel mortgage by the mortgagee to himself, or to a corporation of his creation, or to one in which he has a director's voice and vote, will only be permitted to stand, if timely challenged, when the circumstances clearly show fair dealing and good faith on the part of the mortgagee." (*Graves v. Negy,* 114 Kan. 373, syl. ¶ 6, 219 Pac. 286.)

The judgment is affirmed as to the first cause of action and reversed as to the second, and the cause is remanded for further proceedings as to the second cause of action.

HOPKINS and HUTCHISON, JJ., not sitting.